**FEDERAL ELECTION COMMISSION,
Petitioner,**

v.

**ILLINOIS MEDICAL POLITICAL
ACTION COMMITTEE (IMPAC)
et al., Respondents.**

No. 78 C 1138.

United States District Court,
N. D. Illinois, E. D.

Sept. 22, 1980.

William C. Oldaker, Federal Election Commission, Washington, D.C., for petitioner.

Richard E. Favoriti, Arnold Kanter, Burditt & Calkins, Chicago, Ill., for respondents.

MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Petitioner, the Federal Election Commission, is seeking to have this court dissolve the stipulated protective order entered into between the parties on March 30, 1978. The stipulated order superseded a court order entered on March 28, and provided,

among other things, that material disclosed by respondent, Illinois Medical Political Action Committee during the course of a then pending FEC investigation would remain "sealed from public view until such time as this Court determines that the confidentiality provision of the act no longer appl[ies], or for any other reason orders that the record be reopened." On November 20, 1978, the cause in which the protective order was entered (a subpoena enforcement proceeding) was dismissed on motion of the FEC and subject to the provision that "documents heretofore submitted in camera [are] to be retained by [the] court until completion of [the FEC] investigation." On November 20, 1979, the parties entered into a conciliation agreement terminating the FEC investigation. Entry of this agreement, the Commission argues, requires dissolution of the protective order.

IMPAC responds that this result is barred by two provisions of the Federal Elections Campaign Act and by several provisions of the Freedom of Information Act. The first FECA provision, 2 U.S.C. § 437g(a)(12)(A), states that,

> "any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made."

IMPAC argues that this language seals FEC investigative files forever. This argument is unpersuasive.

■ The confidentiality provision of the Federal Election Campaign Act was added to the statute when it was extensively amended in 1976. The legislative history of the provision clearly establishes that it was not meant to conceal the results or the contents of an investigation, but rather that it was meant to avoid adverse speculative publicity during the pendency of an investigation. *See* House Conference Report, No. 94–1057, at 50 (94th Cong., Second Session, April 28, 1976), U.S.Code Cong. & Admin. News 1976, p. 946; 122 Cong.Rec. 8566 (March 30, 1976) (statement of Congress-

man Hays). Though the enforcement provisions of the Act were again amended in 1979, no substantive change was made or intended in the language of section (a)(12)(A). House Report No. 96–422, at 22–23 (96th Cong., First Sess., Sept. 7, 1979), U.S.Code Cong. & Admin.News 1979, p. 2860. The goal of avoiding speculative publicity was plausibly served by maintenance of the protective order during the pendency of the investigation, but it is difficult to see how that goal is served by continuation of the protective order now that the investigation has terminated. Accordingly, the legislative history would suggest that IMPAC's reliance on (a)(12)(A) is misplaced.

This result is supported by a second consideration. To accept IMPAC's construction of the confidentiality provisions would mean that material which would otherwise not be privileged suddenly achieves the status of confidentiality by virtue of its having been surrendered in the course of an FEC investigation. Since normally privileged material submitted in the course of an agency proceeding is protectible under other statutes, *see, e. g., Chrysler Corp. v. Brown*, 441 U.S. 281, 294–319, 99 S.Ct. 1705, 1714–1726, 60 L.Ed.2d 208 (1979), or, presumably, traditional common law doctrines, IMPAC's position would provide an extension of protection for precisely that information which has traditionally been deemed open to public scrutiny. In the absence of any clear statutory directive to the contrary, the court declines to reach this anomalous result.

■ The second FECA provision on which IMPAC relies, 2 U.S.C. § 437g(a)(4)(B)(i), is no more helpful to its cause than (a)(12)(A). This provision establishes that

> "No action by the Commission or any person, and no information derived, in connection with any conciliation attempt by the Commission under subparagraph (A) may be made public by the Commission without the written consent of the respondent and the Commission."

The "conciliation" process referred to in this provision is a phase of the FEC proceedings which is normally entirely distinct from the investigative–discovery phase. The statute clearly contemplates that the conciliation attempts will normally not commence until after the Commission's factual investigation has concluded and four members of the Commission have voted to find that there is "probable cause" to believe that the Act has been violated. 2 U.S.C. § 437g(a)(4)(A)(i). While it is not difficult to imagine situations in which the conciliation and investigatory processes will blend into one another, the exhibit filed in support of the Commission's brief makes it clear that the documents at issue were turned over during a wholly distinct investigatory phase of this proceeding. Accordingly, section (a)(4)(B)(i) cannot plausibly be construed as protecting the documents currently covered by this court's order.

This linguistic analysis is buttressed by the policies which underlie (a)(4)(B)(i). The point of that provision seems to have been Congress' desire to facilitate the informal exchange of information and views, so necessary to any conciliation process. *See* H.Rep. No. 96–422, *supra*, at 21. Where, as here, the information in question was obtained before conciliation was even begun, and where, as here, the information was not obtained informally, but only after recourse to the courts, no conciliation related policy is served by a continuation of the protective order. In short, neither of the FECA confidentiality provisions is applicable to the facts of this case.

█ This leaves IMPAC's Freedom of Information argument. IMPAC cites several portions of the Freedom of Information Act, 5 U.S.C. § 552, which would arguably exempt the documents at issue in this case from FOIA's mandatory disclosure provisions. However, even assuming that these provisions do apply to these documents, they still do not provide a basis for maintaining the protective order. The Supreme Court has expressly held that FOIA exemptions do not create any right of confidentiality on the part of persons whose documents are in the possession of the government. *Chrysler Corp., supra*, at 290–294, 99 S.Ct. at 1712–1714. This result seems to leave the disclosure question squarely within the discretion of the Commission. Because IMPAC has claimed no special privilege with respect to any of the documents on file, the court is unaware of any reason why it should view the FEC's decision to exercise its discretion in this case as unwarranted.

For all of the above reasons, the motion of the Federal Election Commission must be granted. All protective orders entered in this case are hereby dissolved.