REAGAN BUSH COMMITTEE, et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION, Defendant.

Civ. A. No. 81–1893.

United States District Court, District of Columbia.

Nov. 17, 1981.

Edward L. Weidenfeld, Herbert L. Fenster (argued), Thomas W. Hussey, McKenna, Conner & Cuneo, Washington, D. C., for plaintiffs.

Charles N. Steele, Gen. Counsel, Lawrence M. Noble, Asst. Gen. Counsel (argued), Sondra L. Mills, Daniel J. Blessington, Attys., Federal Election Commission, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This is an action by the Reagan Bush Committee and the Reagan Bush Compliance Fund (collectively, RBC), two cam-

paign committees of the Republican Presidential and Vice-Presidential candidates in the 1980 election to enjoin defendant, the Federal Election Commission (FEC), from withholding certain documents assertedly required to be disclosed under the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), and from making any public disclosure of certain reports relating to audits of RBC conducted by the FEC before RBC is afforded an adequate hearing with respect to the subject of the audit and related matters pending before the FEC.

A hearing on the preliminary injunction sought by RBC was consolidated with the trial on the merits and held on October 21, 1981. The FEC has moved to dismiss the cause for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. RBC has moved for partial summary judgment, asking that the Court enter an order precluding the FEC from rendering and publishing an interim determination on allegations and recommendations pending before the Commission with respect to any violations of federal election laws RBC may be charged with having committed, or any repayments of campaign funds that the FEC may order RBC to make, without first providing RBC the hearing it seeks. Because it is clear that the FEC has not withheld any documents from RBC improperly and that the report the FEC plans to disclose cannot by law contain information concerning violations of election laws and, in any event, is not a *final* determination of liability (continued input into the process and judicial review still to be available to RBC at subsequent stages of the administrative procedure), dismissal without prejudice as to the FOIA request and summary judgment as to the application for injunctive relief against

public disclosure of the audit report will be granted to the FEC and RBC's motion for partial summary judgment will be denied.

Some discussion of the background of this case is necessary to comprehend what precisely is at stake here. Indeed, defendant suggests that the dispute may in part be attributable to a misunderstanding on the part of RBC as to the relevant audit process and the nature of the report the FEC plans to make public. The two RBC committees are organizations authorized to receive campaign contributions and payments and to make campaign expenditures under the Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431 *et seq.*, and the Presidential Election Campaign Fund Act (PECFA), 26 U.S.C. §§ 9001 *et seq.* Complaint, ¶¶ 2, 3. RBC received $29,440,000 from the United States Treasury through the Presidential Election Campaign Fund. Defendant's Statement of Facts Not in Dispute, ¶ 5. RBC was paid this amount upon the conditions that it comply with certain provisions of PECFA and, *inter alia*, agree "to obtain and furnish to the Commission such evidence as it may request of the qualified campaign expenses of [its] campaign," "to keep and furnish to the Commission such records, books, and other information as it may request," and "to [submit to] an audit and examination by the Commission under Section 9007 and to pay any amounts required to be paid under such section." Letter from the Honorable Ronald Reagan and the Honorable George Bush to the Commission, July 18, 1980 (Exhibit 1 to Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction). These conditions are prerequisites to eligibility to receive funds under PECFA. 26 U.S.C. § 9003(a).[1]

The FEC is the agency responsible for administering the provisions of the two

---

1. 26 U.S.C. § 9003(a) provides:

(a) In general. In order to be eligible to receive any payments under section 9006, the candidates of a political party in a presidential election shall, in writing—

(1) agree to obtain and furnish to the Commission such evidence as it may request of the qualified campaign expenses of such candidates,

(2) agree to keep and furnish to the Commission such records, books, and other information as it may request, and

(3) agree to an audit and examination by the Commission under section 9007 and to pay any amounts required to be paid under such section.

acts. The two acts have different, but related purposes. PECFA establishes a fund for Presidential candidates' campaigns from tax monies. The act provides a scheme by which candidates are determined to be eligible for payments from the fund and sets forth standards to determine when candidates have received more than their fair share of monies from the fund and must make repayments. 26 U.S.C. §§ 9001 *et seq.* FECA, on the other hand, does not concern the disbursement of campaign funds to candidates, but regulates the organization and operation of campaigns, by, *inter alia*, requiring certain organizational and financial reports, and prohibiting or limiting certain campaign contributions. 2 U.S.C. §§ 431 *et seq.* The FEC derives authority from PECFA to conduct audits and examinations to determine whether repayments are due under that act. 26 U.S.C. § 9007.[2] Its authority to enforce *violations*

of PECFA (*e. g.*, knowing and willful failures to comply with the payment conditions, *see*, 26 U.S.C. § 9012) and of FECA is found in FECA, at 2 U.S.C. § 437g.

The audit report in question is a product of the examining and auditing process under PECFA, rather than of the enforcement procedure under FECA. The audit process begins after each Presidential election, when the Commission is required to conduct an examination and audit of the qualified campaign expenses of the candidates of each political party for President and Vice President. 26 U.S.C. § 9007(a); 11 C.F.R. § 9007.1. The audit serves to determine whether the candidate has been paid from the Campaign Fund more than he was entitled to receive under section 9004 of the Act and should make repayments to the Fund. 26 U.S.C. 9007(b); 11 C.F.R. § 9007.2. An interim audit report, not required by statute or regulation, is presented to each can-

---

**2.** 26 U.S.C. § 9007 provides:

(a) Examinations and audits. After each presidential election, the Commission shall conduct a thorough examination and audit of the qualified campaign expenses of the candidates of each political party for President and Vice President.

(b) Repayments.

(1) If the Commission determines that any portion of the payments made to the eligible candidates of a political party under section 9006 was in excess of the aggregate payments to which candidates were entitled under section 9004, it shall so notify such candidates, and such candidates shall pay to the Secretary of the Treasury an amount equal to such portion.

(2) If the Commission determines that the eligible candidates of a political party and their authorized committees incurred qualified campaign expenses in excess of the aggregate payments to which the eligible candidates of a major party were entitled under section 9004, it shall notify such candidates of the amount of such excess and such candidates shall pay to the Secretary of the Treasury an amount equal to such amount.

(3) If the Commission determines that the eligible candidates of a major party or any authorized committee of such candidates accepted contributions (other than contributions to make up deficiencies in payments out of the fund on account of the application of section 9006(c)) to defray qualified campaign expenses (other than qualified campaign expenses with respect to which payment is required under paragraph (2)), it shall notify such candidates of the amount of

the contributions so accepted, and such candidates shall pay to the Secretary of the Treasury. an amount equal to such amount.

(4) If the Commission determines that any amount of any payment made to the eligible candidates of a political party under section 9005 was used for any purpose other than—

(A) to defray the qualified campaign expenses with respect to which such payment was made, or

(B) to repay loans the proceeds of which were used, or otherwise to restore funds (other than contributions to defray qualified campaign expenses which were received and expended) which were used, to defray such qualified campaign expenses,

it shall notify such candidates of the amount so used, and such candidates shall pay to the Secretary of the Treasury an amount equal to such amount.

(5) No payment shall be required from the eligible candidates of a political party under this subsection to the extent that such payment, when added to other payments required from such candidates under this subsection, exceeds the amount of payments received by such candidates under section 9006.

(c) Notification. No notification shall be made by the Commission under subsection (b) with respect to a presidential election more than 3 years after the day of such election.

(d) Deposit of repayments. All payments received by the Secretary of the Treasury under subsection (b) shall be deposited by him in the general fund of the Treasury.

didate's campaign committee, with an opportunity to respond thereto, under an informal practice established by the FEC. Letter from FEC Chairman McGarry to Counsel for RBC, August 4, 1981 (Exhibit H to Complaint).

Upon completion of the final audit, which may or may not contain a determination that repayments are appropriate, the Commission is required to notify the candidates whether such repayments will be required. 26 U.S.C. § 9007(b)(2); 11 C.F.R. § 9007.-2(a). A candidate found to be owing repayments must make such repayments within 30 days of receiving notice thereof from the Commission, but may request a 90 day extension of the repayment period. 11 C.F.R. § 9007.2(b). Moreover, if a candidate disputes the finding that repayments are due, he is afforded the opportunity to present to the Commission his arguments to the contrary, in writing, within 30 days of the issuance of the Commission's determination, a further 30 day extension of such time available upon request by the candidate and grant by the Commission. 11 C.F.R. § 9007.2(c). The Commission must consider any such submittals by a candidate in making its final determination on the repayment question, which determination must contain a written statement of reasons for the recommendation made. 11 C.F.R. § 9007.2(d), (e). Judicial review of a final determination on this issue is available by appeal to the United States Court of Appeals for the District of Columbia Circuit. 26 U.S.C. § 9011(a).

If the audit process should uncover information indicating a *violation* of PECFA (*i. e.*, the *knowing and willful* incurring of excess expenditures, acceptance of certain contributions to defray expenses, making unauthorized expenditures and contributions, and the like as noted at 26 U.S.C. § 9012) or FECA, such information may be used in the enforcement process under FECA, at 2 U.S.C. § 437g. However, information relating to any notification or investigation under § 437g must remain confidential. 2 U.S.C. § 437g(a)(12)(A).

In the matter at hand, the FEC is not near its final determination on the question of repayment. The FEC commenced its audit report of RBC pursuant to 26 U.S.C. § 9007 on January 28, 1981. Defendant's Statement of Facts Not in Dispute, ¶ 6. On March 27, 1981, the Audit Division of the FEC held an "exit conference" with officials and attorneys of RBC at which they discussed the Audit Division's preliminary findings. *Id.* The same findings were expressed in the Audit Division's "interim report," which was delivered to RBC on June 19, 1981. *Id.*; Complaint, ¶ 15. In the letter accompanying the report, the Assistant Staff Director for the Audit Division informed RBC that it would have 30 days to respond to the findings of the auditors, after which time the audit staff would present a "final audit report" to the Commission for its approval and for subsequent public release. Exhibit A to Complaint; Defendant's Statement of Facts Not in Dispute, ¶ 6. On July 6, 1981, RBC asked for a 30 day extension of its time to respond to the interim report, which was denied by the FEC on July 13, 1981. RBC submitted its response to the report on July 20, 1981, under protest, because it contended that it needed more time to make an adequate response and believed it was entitled to a stay of further Commission action and an administrative hearing on the issues considered in the report. Plaintiffs' Response to Defendant's Statement of Facts, ¶¶ 6, 7; Complaint, ¶ 39. On August 4, 1981, the FEC granted RBC an extension of time until August 11, 1981 to supplement its response in writing, but denied its request for a stay of further action and a hearing. Letter from FEC Chairman McGarry to Counsel for RBC (Exhibit H to Complaint). RBC filed its complaint with this Court on August 10, 1981, and shortly thereafter, submitted its supplemental response to the interim audit report.

With the facts of the events leading up to the instant matter established, an examination of RBC's claims is in order.

1. RBC's Request for Disclosure of Documents under the Freedom of Information Act

In the course of the auditing process discussed above, and by the date of its com-

plaint in this action, RBC had made three requests to the FEC for documents and records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The first request, dated July 6, 1981, sought records in the FEC's control or possession which were generated or relied upon in the course of its examination and audit of RBC's receipts and expenditures. Complaint, ¶ 18. The second request, made July 17, 1981, sought information as to procedural standards and rules followed by the FEC in the audit process under PECFA. *Id.,* at ¶ 20. The third request, dated July 20, 1981, sought information as to substantive standards and rules followed by the FEC in the PECFA audit process and in enforcing the limitations on contributions and expenditures set forth in FECA at 2 U.S.C. § 441a. *Id.,* at ¶ 22. RBC, in its complaint, alleged that the FEC had not provided it with access to materials responsive to the second and third requests, nor a disclosure determination with respect to the requests, and that, although the FEC provided it with documents represented to be all those responsive to the first request, other responsive documents remained to be disclosed or identified to RBC. *Id.,* at ¶¶ 21, 23, 24. As a result, RBC argues, as to the second and third requests, the FEC failed to meet the requirement of timely response to information requests established in FOIA and FEC regulations at 5 U.S.C. § 552(a)(6) and 11 C.F.R. § 4.7.

The FEC avers that RBC made five requests in all to it under FOIA, including the requests of July 6, 17, and 20 noted above, and two additional ones, on July 29 and 30, 1981. Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction, at 10. The requests of July 29 and 30, according to the FEC, sought, respectively, records concerning the standards and rules followed by the FEC in enforcing the contribution limitations of FECA at 2 U.S.C. § 441a(a)(1)(A) and 11 C.F.R. § 110.1(a)(1), and a report on the FEC's policies and procedures prepared for it by Arthur Andersen & Co. *Id.,* at 11.; Exhibits 5, 6 to Defendant's Opposition.

It is clear that the FEC has made a good faith, diligent effort to comply with, and has substantially complied with, RBC's five FOIA requests. By letter to RBC of August 27, 1981 the FEC's Freedom of Information Act officer noted that the agency had, on July 30, acknowledged to RBC receipt of its second and third requests (the requests of July 17 and 20) and its July 29 request, advising RBC that the search for records would begin on August 3, 1981. Letter from FOIA Officer Fred Eiland to Counsel for RBC (Exhibit 7 to Defendant's Opposition). In the same letter, the FOIA Officer stated that RBC's requests were "quite broad," but that even despite RBC's refusal to narrow its requests, the FEC would "continue to make, every effort to identify those documents which respond, or potentially respond to those requests." *Id.* The FEC avers that the July 30 request was answered in full on August 12, 1981, and that RBC was provided with a box of documents sought under the July 17, 20, and 29 requests and indexes to other records potentially responsive to those requests. Defendant's Memorandum in Opposition to Plaintiff's Motion, at 11; Exhibits 8, 9 to Defendant's Opposition. Additional documents were disclosed and an index given to RBC of documents the FEC believed exempt from disclosure on September 17, 1981. Exhibit 1 to Defendant's Memorandum of Points and Authorities in Support of its Motion to Dismiss, Or, in the Alternative, for Summary Judgment.

Inasmuch as the FEC has responded to RBC's five requests under FOIA with due diligence and that requested documents have been made and continue to be made available to RBC, judicial intervention as to the disclosure of the records in question is premature. At the hearing on the merits of this case on October 21, 1981, counsel for RBC did not press the issue of the documents' disclosure; moreover, RBC has not challenged the FEC's assertion that it has made substantial compliance with the requests for disclosure. RBC has never specified to this Court which documents it believes should be but have not been disclosed.

The FEC has responded to each of the requests promptly; however, to the extent that it was not able to respond precisely within the period within which the statute requires disclosure, it is evident on the record that the wide scope of the requests and the consequent difficulty of their processing, created "exceptional circumstances" that could justify the delay. *See,* 5 U.S.C. § 552(a)(6)(B); *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C.Cir.1976). In any case, as disclosure of the records and documents is ongoing, and as RBC has not delineated which documents it claims must yet be disclosed, no action shall be taken by the Court as to such disclosure, and the prayer for an injunction against the FEC to enjoin it from denial of notice of and access to the requested documents, for orders to compel disclosure of the documents and to expedite proceedings, and for attorney's fees and costs, will be dismissed without prejudice.

2. RBC's Prayer for an Injunction Against Further FEC Action Regarding Repayment Determinations and Possible Statutory Violations and Against Disclosure of the Audit Report

The major issue in the matter at hand, and that which was the focus of the hearing on the merits of this action, is whether the FEC should be enjoined from rendering a final determination or making any public disclosure with respect to what RBC calls "alleged statutory violations and recommended repayment requirements," purportedly arising from the FEC's audit under PECFA, until RBC is given an opportunity to respond to the disputed allegations and recommendations, including a hearing, and presented with the documents it seeks under FOIA. Complaint, ¶¶ 11–12. In support of its motion to dismiss, or alternatively, for summary judgment, the FEC's position essentially is that since the audit report to be disclosed will not contain any determinations by the FEC of *violations* of FECA or of PECFA, but by law may merely contain recommendations that *repayments* not relating to violations of law be made, due

process does not require any opportunity to be heard at this time. As such, the FEC argues, RBC has failed to present a justiciable case or controversy creating jurisdiction in this Court over the subject matter of this dispute. RBC, in opposition, and in support of its motion for partial summary judgment on the issue of the request to enjoin disclosure of the report, argues that this Court does have subject matter jurisdiction under the jurisdictional statute for federal questions, 28 U.S.C. § 1331, and under the provision of FOIA concerning failure to make timely disclosures of records, 5 U.S.C. 552(a)(4)(B), since, it argues, documents have not been released timely and the FEC's refusal to grant it an opportunity to be heard deprives it of procedural safeguards and confidentiality provisions of FECA and PECFA. RBC asserts that these protections are necessary because, it alleges, the FEC "unequivocally has represented that it will render and publish a 'final audit report' on the alleged statutory violations and repayment recommendations". Obviously, there is a misunderstanding as to the contents of the impending audit report.

It is clear that repayment determinations under section 9007 of PECFA do not constitute findings or allegations of violations of the act under section 9012, RBC's interpretation to the contrary. The FEC has characterized repayment determinations as analogous to determinations that income tax is owed: unless it is not paid or there is a willful attempt to evade payment, there is no violation of law. The meager legislative history on this point bears this out. Repayment determinations are not considered to involve violations of law, but "Criminal penalties are provided for willful violations constituting prohibited transactions." H. Conf. Rept. No. 92–708, 92d Cong., 1st Sess, 117 Cong. Rec. 44783 (Dec. 4, 1971), *reprinted in* (1971) U.S.Code Cong. & Admin.News 2077. Appropriately, the procedure leading to repayment determinations which includes the audit process and the procedure for enforcing violations of PECFA and FECA are treated as two dif-

ferent functions under the statutory scheme and by the FEC in practice.

■ FEC Chairman McGarry, in his August 4, 1981 letter to RBC counsel, Exhibit H to Complaint (McGarry Letter), explained to RBC the FEC's interpretation of the law relevant to the audit procedure. He correctly distinguished the FEC's enforcement function from its audit function by noting that findings concerning violations of federal election laws are governed by FECA, at 2 U.S.C. § 437g, while the FEC's authority to make repayment determinations is derived from PECFA, at 26 U.S.C. § 9007(b). As such, Chairman McGarry correctly noted, the instant audit process was governed by PECFA, specifically 26 U.S.C. § 9007 and regulations promulgated thereunder. McGarry Letter at 1–2. It was at this point that Chairman McGarry explained to RBC the significance of the interim audit report, stating that:

> Although not required by statute or regulation, the issuance of an interim audit report and the opportunity to respond to such report are among several informal steps in the audit process.

> \* \* \* \* \* \*

> It has been Commission practice to allow committees of publicly-financed candidates a period of 30-days from receipt of an interim report to submit responses to matters contained in the report. Such responses are reviewed by the Audit Division prior to making any recommendations to the Commission, and are considered by the Commission before voting on the contents of the final audit report.

*Id.*

As such, it is clear that the interim report made available to RBC in June, 1981 and the final audit report that the FEC seeks to disclose are two different documents that in all probability will contain different material, inasmuch as the final audit report which would be made public would follow further submissions by RBC. In addition, Chairman McGarry specifically noted that, at the time of his letter, the Audit Division "ha[d] yet to make a recommendation for repay-

ment" and that a certain dollar amount on the interim report represented a preliminary calculation which "should not be interpreted · as a Commission determination." McGarry Letter, at 3.

■ Moreover, by law the final audit report cannot contain assertions of violations of election laws. As noted above, violations of FECA and PECFA, as distinguished from repayment determinations, are enforced under FECA, at 2 U.S.C. § 437g. The relevant part of that section provides that "Any notification or investigation made under this section shall not be made public by the Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made." 2 U.S.C. § 437g(a)(12)(A). Consequently, RBC's fears of disclosure of information relating to alleged violations are groundless, and therefore, with respect to disclosure of such information, there is nothing to require remedying.

■ Inasmuch as the audit process is merely a preliminary procedure which may lead to initial determinations that repayments are due or cause the FEC to initiate proceedings as to statutory violations, the audit report does not constitute a final determination for which due process would require an opportunity to be heard. The audit report merely is part of a fact-finding investigation, and as such, to afford RBC the full panoply of judicial procedures now would be premature, serving only the pursuit of delay. *See, e. g. Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960).

Still, the audit process leading to repayment determinations is replete with procedural protections. As noted above, after a campaign committee is given its interim audit report, FEC practice is to allow a 30 day period for written responses thereto, even though regulations require neither the presentation of this interim audit report to the campaign committees nor the opportunity to respond to it. McGarry Letter (Exhibit H to Complaint), at 2. RBC was given not only the 30 day period to respond, but

an extension of time (to August 11). Moreover, the materials submitted by a committee to the FEC as a part of this informal procedure are considered by the Audit Division in making recommendations to the Commission, and by the Commission as well before making its final determination, even though, again, nothing in the regulations or statutes requires the FEC to allow such submittals. After an initial repayment determination is made, regulations provide for 30 days (and a possible 30 day extension) to make additional submittals in writing in the event that the campaign committee disputes the FEC's initial determination. 11 C.F.R. § 9007.2(c). Any materials submitted under 11 C.F.R. § 9007.2(c) must be considered by the FEC in making its final determination. 11 C.F.R. § 9007.2(d). That final determination must include a statement in writing for the FEC's action, 11 C.F.R. § 9007.2(e), and is, as noted above, reviewable in the Court of Appeals. 26 U.S.C. § 9011(a).

■ Consequently, the statutory audit procedure furnishes RBC with sufficient input comporting with the requirements of due process. Moreover, should the information in the audit procedure lead toward enforcement of violations under FECA, the law provides for adequate notice of allegations of such violations, see, 2 U.S.C. § 437g(a)(2), and an opportunity to resolve the matter by informal methods of conference and conciliation, 2 U.S.C. § 437g(a)(4)(A)(i), with such conciliation efforts remaining confidential pursuant to 2 U.S.C. § 437g(a)(4)(B)(i). Should the matter not be resolved by informal means, the FEC has the authority to initiate a civil action for relief in an appropriate United States District Court, under 2 U.S.C. § 437g(a)(6), where the campaign committee charged with violations of law would have all the procedural protections normally afforded defendants in civil cases.

■ RBC also argues that the terms of FECA and PECFA, aside from due process requirements, direct that the audit report in question remain confidential. RBC cites 2 U.S.C. § 437g(a)(4)(B)(i) and § 437(a)(12) for the proposition that FECA prohibits disclosure of information concerning proceedings thereunder. However, these provisions apply only to enforcement proceedings under FECA, and not to the audit and repayment determination process set forth in PECFA. Subsection (a)(4)(B)(i) specifies that no information in connection with a "conciliation attempt" by the FEC under section 437g(a)(4)(A) may be made public without the parties' written consent. Yet the audit process is not a "conciliation attempt" under that statute, but a procedure under PECFA, and as such, the confidentiality provision of subsection (a)(4)(B)(i) does not apply. *Federal Election Commission v. Illinois Medical Political Action Committee*, 503 F.Supp. 45, 47 (N.D.Ill.1980). Subsection (a)(12), as noted above, requires that "[a]ny notification or investigation made under this section shall not be made public" without the written consent of the parties. Again, however, the audit process is not a "notification or investigation" under section 437g, but a procedure established by PECFA. Moreover, as another court noted, "The legislative history of the provision [section 437g(a)(12)(A)] clearly establishes that it was not meant to conceal the results or the contents of an investigation, but rather that it was meant to avoid adverse speculative publicity during the pendency of an investigation." *Federal Election Commission v. Illinois Medical Political Action Committee, supra*, at 46, citing H. Conf. Rept. No. 94–1057, 94th Cong., 1st Sess. 50, *reprinted in* [1976] U.S.Code Cong. & Admin.News 946; 122 Cong. Rec. 8566 (Mar. 30, 1976) (statement of Rep. Hays). As such, these subsections do not support RBC's argument that the final audit report must be made confidential.

■ RBC also cites a provision of PECFA in reinforcement of its argument that confidentiality is required, which provides that "It shall be unlawful for any individual to disclose any information obtained under the provisions of this chapter except as may be required by law." 26 U.S.C. § 9012(g)(1). RBC argues that, with respect to information obtained in the

course of the audit procedure under 26 U.S.C. § 9007, PECFA, at 26 U.S.C. § 9009(a), authorizes disclosure only to Congress, and that such disclosure is limited to the amount of payments required and the reasons therefor. The FEC, however, contends that audit reports are in fact required by law to be made public, pointing to FOIA and section 9009(a) of PECFA.[3] Certainly, it is difficult to find a mandate of confidentiality in section 9009(a). This section requires the FEC after each election to submit reports to Congress as to financial data of campaign committees receiving funds under PECFA. Nowhere does the statute suggest that Congress is to keep such reports confidential, and since the information that is the subject of these reports to Congress does not involve conciliation efforts or notifications or investigations under section 437g of FECA, neither do the provisions under that section compel Congress to guard the confidentiality of these reports. Indeed, the fact that each report submitted under section 9009(a) is required under that statute to be "printed as a Senate document" compels the conclusion that such reports were intended by Congress to be open to public view. Clearly, section 9009(a) evinces a purpose on the part of Congress to allow taxpayers who chose to direct a portion of their taxes to the Presidential Election Campaign Fund to know exactly how those tax monies are being spent. *See*, H.Conf.Rept. 92–708, 92d Cong., 2d Sess., 117 Cong.Rec. 44783 (Dec. 4, 1971), *reprinted in* [1971] U.S.Code Cong. & Admin.News 2077 (concerning requirement of all candidates to furnish periodic expend-

iture statements that would be made public by the Comptroller General).

Yet the interests protected by PECFA do not stop at the public's right to know how tax monies are distributed, but also embrace a concern for openness and accountability to the public in the operation of Presidential campaigns. The legislative history of PECFA demonstrates that allowing the voting public the opportunity for greater scrutiny of political campaigns was an equally important purpose of the act. Senator Pastore, a leading proponent of the bill that established the act, described the act thus: "... it requires frequent reporting and disclose [*sic*] of contributions and expenditures by candidates and their committees so that the electorate may know the source of a candidate's campaign funds and their distribution." 117 Cong.Rec. 41762 (Nov. 17, 1971). As was likewise noted during the same Congressional debates preceding enactment of the act, "the people of this Nation are demanding to know the sources of campaign financing, and they have a right to know from whence comes the 'mother's milk of politics.'" *Id.*, at 41767 (remarks of Sen. Bentsen).

 Finally, as the FEC points out, the audit report, as a document created by the agency, is subject to mandatory disclosure under FOIA. 5 U.S.C. § 552. Again, no statute specifically exempts audit reports from disclosure under FOIA, and regulations promulgated by the FEC provide that it "will make the fullest possible disclosure of records to the public" including audit reports. *See*, 11 C.F.R. §§ 4.2, 4.4(a)(14), 3.2(a). As the FEC notes, the proviso "ex-

---

**3.** 26 U.S.C. § 9009(a) provides:

(a) Reports. The Commission shall, as soon as practicable after each presidential election, submit a full report to the Senate and House of Representatives setting forth—

(1) the qualified campaign expenses (shown in such detail as the Commission determines necessary) incurred by the candidates of each political party and their authorized committees;

(2) the amounts certified by it under section 9005 for payment to the eligible candidates of each political party;

(3) the amount of payments, if any, required from such candidates under section

9007, and the reasons for each payment required; and

(4) the expenses incurred by the national committee of a major party or minor party with respect to a presidential nominating convention;

(5) the amounts certified by it under section 9008(g) for payment to each such committee; and

(6) the amount of payments, if any, required from such committees under section 9008(h), and the reasons for each such payment.

Each report submitted pursuant to this section shall be printed as a Senate document.

cept as may be required by law" in section 9012(g)(1) must be read to incorporate FOIA's disclosure requirements.

 In light of the full opportunity for input into the audit process, the protections within FECA and PECFA against premature disclosure of information relating to violations of law, and the availability of judicial review, it is clear that the only interest that could be affected by publication of the report is RBC's concern about its reputation. However, this interest is not sufficient to warrant keeping the audit report in question secret especially when this particular report will not contain information implicating RBC with violations of law. Otherwise, information of this type that Congress has declared to be of important public interest never could be disclosed.

 It should not be overlooked that Congress has demonstrated a concerned intent that the acts' purpose of openness not be stultified by unnecessary delay in the publication of the audit reports and their presentation to the electorate for whose benefit their creation was mandated by law. Congress was troubled by the inability of the FEC to make prompt disclosure of the audit reports it prepared following the 1976 election, and it was this concern that ultimately prompted the Commission to adopt new procedures to streamline the audit process. During hearings before the Senate Committee on Rules and Administration, Senator Pell expressed his concern with the delays affecting the audit reports' production thus:

> . . . if [the audit report] is delayed this year and goes on another six months, another year, we are into another campaign before we are through with the . . . campaign, so there is no purpose in the whole operation, because nobody is interested in history. And this will become history before we are through.
>
> \* \* \* \* \* \*
>
> . . . the purpose is for the public to know.

*Transcript of Proceedings, Committee on Rules and Administration, United States Senate* (Mar. 15, 1978), at 14, 16 (Exhibit 14 to Defendant's Opposition). The intent of Congress cannot be denied. Prompt disclosure of the audit reports to the electorate is essential to meeting the purposes of PECFA and FECA.

 The Supreme Court declared that the primary purpose of PECFA is "to limit the actuality and appearance of corruption resulting from large individual contributions." *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976). As another court noted, "The purpose of the Federal Election Campaign Act is clear. Congress sought to insure the integrity of the election process by regulating the critical aspects of campaigning and campaign funding, and by opening up the whole area to informed scrutiny by the electorate." *Gifford v. The Congress*, 452 F.Supp. 802, 805 (E.D.Cal.1978). Certainly, these purposes of openness and accountability cannot be achieved if the financial operations of Presidential campaigns supported by tax monies are allowed to remain guarded from all public view. The public has a right to know, and promptly, how its monies are spent by Presidential campaign committees.

Consequently, for the reasons set forth in this Memorandum Opinion, RBC's motion for partial summary judgment to enjoin disclosure of the audit report by the FEC must be denied, and the FEC's motion shall be granted, dismissing without prejudice the claim as to the FOIA request and entering summary judgment for the FEC as to RBC's prayer for an injunction against disclosure of the audit report.

In light of the foregoing, it is, by the Court, this 17th day of November, 1981,

ORDERED, that the motion of Defendant Federal Election Commission to dismiss, or, in the alternative, for summary judgment, be, and hereby is granted, as to Plaintiffs' prayer for an injunction enjoining Defendant's continued withholding of documents sought by Plaintiffs under the Freedom of Information Act, by the dismissal of this prayer only, without prejudice.

An order of Judgment consistent with this Memorandum Opinion and Order shall be filed herewith.