**Michael D. RAY, Individually and as Attorney for Certain Haitian National Clients and Ives Audate, Jean Hevil Loiseau and Yvon Nicolas, Plaintiffs–Appellees, Cross–Appellants,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Immigration and Naturalization Service and the State Department, Defendants–Appellants, Cross–Appellees.**

No. 89–5375.

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1990.

Carole A. Jeandheur, Civil Div., Federal Program Branch, Bruce G. Forrest, Leonard Schaitman, App. Staff, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants, cross-appellees.

Michael D. Ray, Neil Kolner, Miami, Fla., for plaintiffs-appellees, cross-appellants.

Before FAY and JOHNSON, Circuit Judges and FLOYD R. GIBSON *, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

Michael Ray, individually and on behalf of three named Haitians seeking political asylum in the United States, brought this action under the Freedom of Information Act ("FOIA") and the Administrative Procedure Act to compel the production of records from three federal agencies and for declaratory and injunctive relief from exclusion and deportation proceedings. In response to the plaintiffs' FOIA request, the Department of State produced 25 documents but redacted certain identifying information from 17 of them, claiming that the information was exempt from disclosure under FOIA. The district court ruled that the FOIA exception was not applicable and ordered the State Department to disclose the redacted information. The district court also dismissed the FOIA claims against the other two agencies, refused to enjoin the plaintiffs' deportation and exclusion proceedings, and refused the plaintiffs' request for class certification. Both sides appeal. We affirm the district court's decision.

## I. FACTS

Named as defendants in this case are the Immigration and Naturalization Service of the United States Department of Justice ("INS"); the Executive Office for Immigration Review, Office of the Immigration Judge ("EOIR"); and the United States Department of State. Primarily, the plaintiffs seek information regarding how the Haitian government treats its citizens who have attempted unsuccessfully to flee to the United States and are returned to Haiti. The plaintiffs' desire for this information was triggered by two articles in Miami newspapers in which INS officials were quoted as stating that Haitian returnees were not being persecuted after they re-turned to Haiti. The first article stated that an INS district director so strongly believed that Haitian returnees were not being persecuted in Haiti that he "even offered to provide names of 600 Haitians who have been sent back so that doubters can go to Haiti and speak to the people directly." Record Excerpts at 140 (quoting Miami News, March 12, 1985). In the second article, an INS official was quoted as stating that the "INS routinely sends inspectors to Haiti to interview people who have been returned by American authorities [and] failed emigees reported no persecution since their return." Record Excerpts at 119 (quoting The Miami Herald, Dec. 31, 1984).

The plaintiffs disagree with the view that returned Haitians are not subject to persecution. They submitted FOIA requests with the INS and the State Department seeking reports of interviews by INS officials with persons who had been involuntarily returned to Haiti. Dissatisfied with what they received, the plaintiffs filed this suit in November 1986 against the State Department, the INS, and the EOIR. The plaintiffs sought: (1) class certification; (2) an order compelling the defendants to comply with their FOIA requests; (3) an order enjoining the plaintiffs' final deportation and exclusion hearings until the defendants provided the requested information and for a period of six months thereafter; and, (4) an order enjoining the dissemination of disinformation by the defendants to the public concerning the fate of Haitian returnees.

The plaintiffs seek an injunction against their deportation proceedings because they believe that they cannot adequately make their cases for political asylum unless they can produce evidence that the Haitian government will persecute them if they are returned. Because of the views expressed by government officials in the Miami newspapers, the plaintiffs anticipate that the State Department, which routinely issues advisory opinions to the INS regarding asy-

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-tion.

lum applications, will represent to the INS that returned Haitians do not face ill treatment in Haiti. The plaintiffs believe that the information they requested under FOIA is essential to their effort to show that they will be subject to punishment in Haiti, and thus they requested the district court to enjoin those proceedings until they receive the information and have had an opportunity to examine it.

In a motion for summary judgment, the INS maintained that it had no records that were responsive to the plaintiffs' FOIA requests, and the EOIR maintained that the district court lacked jurisdiction to consider claims against it because the plaintiffs never submitted a FOIA request to the EOIR. The State Department did produce 25 documents, but from 17 of them the names, addresses, and other identifying information were redacted. The State Department submitted that the withholding of this identifying information was sanctioned by 5 U.S.C. § 552(b)(6) ("Exemption 6"), which exempts from FOIA's mandatory disclosure requirements disclosures which would cause "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1988).

The district court found that the plaintiffs never made a FOIA request to the EOIR. It further found that the INS had conducted a proper search of its records pursuant to the plaintiffs' request and that the record failed to disclose that the INS was improperly withholding any relevant documents. Accordingly, the district court granted summary judgment to the INS and EOIR. *Ray v. United States Dept. of Justice,* 725 F.Supp. 502, 504–05 (S.D.Fla. 1989).

With regard to the State Department, the district court ruled that Exemption 6 of FOIA did not apply to preclude disclosure of the redacted information. Thus, the court ordered the State Department to supply the redacted information within 15 days. Finally, the district court denied the plaintiffs' request for an order enjoining their deportation and exclusion proceedings and denied their motion for class certification. *Id.* at 505.

Both sides filed motions to alter or amend the judgment. The government's motion asked the district court to authorize the State Department's redactions under FOIA Exemptions 1 and 7[1], which had not been raised before; the government also presented further argument under Exemption 6. The district court did not consider the government's Exemption 1 and 7 arguments, finding that the government waived those issues by failing to raise them prior to the district court's judgment. *Id.* at 505–06. The district court granted the State Department's motion for a stay pending appeal.

The State Department appeals the district court's ruling ordering it to supply the redacted information. The plaintiffs cross-appeal the district court's denial of class certification, its refusal to enjoin their deportation and exclusion proceedings, and its ruling that the searches conducted by the INS and the State Department were adequate.

We affirm the district court's judgment in all respects.

## II. ANALYSIS

### A. *The Government's Appeal*

#### 1. Exemption 6 of FOIA

We begin with the arguments raised by the State Department as appellant in this case. The State Department appeals the district court's ruling that it must disclose the information that it redacted from the documents it supplied to the plaintiffs. The government submits that the redacted

---

1. Exemption 1 excludes matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1) (1988). Exemptions 7(C) and 7(D) exclude matters that are "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, [or] (D) could reasonably be expected to disclose the identity of a confidential source...." 5 U.S.C. § 552(B)(7)(C) & (D) (1988).

information, which consists of the names and other identifying information of the Haitian returnees who were interviewed, is exempt from disclosure by 5 U.S.C. § 552(b)(6), which provides that FOIA's mandatory disclosure requirement does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1988).

 Because FOIA is a "broad disclosure statute which evidences a 'strong public policy in favor of public access to information in the possession of federal agencies'" *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir.1985) (quoting *Brown v. Federal Bureau of Investigation*, 658 F.2d 71, 73 (2d Cir.1981)), the disclosure requirements of FOIA must be construed broadly and the exceptions narrowly. *Id.* Documents are presumed to be subject to disclosure; when the government seeks to invoke an exemption, it bears the burden of proving that the exemption applies. *Id. See also Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *Ely v. Federal Bureau of Investigation*, 781 F.2d 1487, 1489–90 (11th Cir.1986); *Currie v. Internal Revenue Service*, 704 F.2d 523, 530 (11th Cir. 1983).

 In determining whether Exemption 6 applies we apply a balancing test, "weighing an individual's right to protection of privacy against the public's right to disclosure of government information." *Cochran*, 770 F.2d at 955 (citations omitted). *See also Rose*, 425 U.S. at 372, 96 S.Ct. at 1604. After employing that test the district court in this case concluded that "[a]ny invasion of privacy from the mere act of disclosure of names and addresses would be de minimis and little more than speculation.... [T]he balance tilts in favor of disclosure of the names because any intrusion into the privacy of the Haitian nationals would be minimal." *Ray*, 725 F.Supp. at 505.

While we believe that the privacy interests at stake here are somewhat more significant than the district court considered them to be, we ultimately agree with the district court that "the balance tilts in favor of disclosure." *Id.* We think it important to candidly acknowledge that it appears that the plaintiffs seek the redacted information so that they can contact directly the Haitians who were interviewed by American officials and question them about how they are treated by the Haitian government since attempting to flee to the United States. In light of that fact, we find it difficult to characterize this invasion of the Haitian returnees' privacy to be no more than de minimis. We are also mindful, as the government points out, that the returnees were promised confidentiality before they talked with U.S. government officials. That, of course, is a factor that adds weight to the privacy interests at stake here, but it is not a factor that compels us to prohibit disclosure in this case. *See Washington Post Co. v. United States Dept. of Health and Human Services*, 690 F.2d 252, 263 (D.C.Cir.1982); *Robles v. Environmental Protection Agency*, 484 F.2d 843, 846 (4th Cir.1973) ("promise of confidentiality is a factor be be considered," but cannot "in and of [itself], override the Act") (citations omitted). Thus, we begin the balancing process by acknowledging that there are significant privacy interests at stake here.

Despite that acknowledgment, we hold that disclosure is mandated because, when balanced against the legitimate public interest in the information, the privacy interest is outweighed. In this regard the government insists that no public interest cognizable under FOIA will be served by disclosure in this case, emphasizing the fact that the plaintiffs seek the information to further their individual interests in gaining political asylum. We recognize that the Supreme Court has made clear that the FOIA's basic purpose is to provide the public with a means of learning what its government is up to; the Act is not designed to assist citizens in gaining information about other individuals for private purposes. In *United States Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the

Court stated "the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Id.* 109 S.Ct. at 1482. Thus, in weighing the public interest served by a particular disclosure we must determine whether disclosure will serve FOIA's basic purpose—" 'to open agency action to the light of public scrutiny.'" *Rose,* 425 U.S. at 361, 96 S.Ct. at 1599 (quoting *Rose v. Department of the Air Force,* 495 F.2d 261, 263 (2d Cir.1974)).

The government argues that the plaintiffs in this case seek the redacted information only to resist deportation efforts against them. We agree that to the extent that the plaintiffs' objectives are self-serving, they indeed are not the kind of objectives that FOIA was meant to further. However, the plaintiffs also seek the information in order to learn whether the United States government is adequately monitoring Haiti's compliance with its obligation not to persecute returnees and to learn whether our government is honest to the public about Haiti's treatment of returnees. They dispute the view expressed publicly by some government officials that Haiti is adhering to its promise not to punish returnees, and they seek information that will assist them in testing the accuracy of that information. We consider these to be matters of great public interest significant enough to outweigh the privacy interests of the Haitian returnees.

The government concedes that there exists "a legitimate public interest in the safe relocation of Haitians." Initial Brief for the Government Agencies at 41. It argues, however, that the disclosure of the identities of the Haitian returnees will not serve that public interest in any way. Obviously, the disclosure of the Haitians' names and addresses, in and of itself, will not tell the plaintiffs anything about Haiti's treatment of its returnees or the U.S. government's honesty about the matter. But the identifying information will give the plaintiffs a means to obtain "public interest" information in that they can then locate the Haitian returnees and inquire about how they were treated after they were returned to Haiti.

The plaintiffs avoid admitting that they intend to use the information by contacting the Haitians directly, but that is the clear implication, and it is one that we do not take lightly. The implication that disclosure will result in direct contacts with the returned Haitians is the factor that makes the invasion of privacy in this case more than "de minimis". But that factor also convinces us that the information sought here is imbued with a significant public interest because it is a means for the public to see what its government is up to regarding the relocation of Haitians and what it is telling the public on the matter.

We have considered the government's argument that requiring disclosure in this case would be inconsistent with the Supreme Court's most recent case on FOIA's privacy exemptions, *United States Dept. of Justice v. Reporters Committee,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In that case the Supreme Court addressed whether FOIA Exemption 7(C) precluded disclosure of a private citizen's "rap sheet" in the possession of the FBI.[2] The requesters argued that the information was of public interest in that the subject of the rap sheet was an officer of a corporation that allegedly had obtained a number of defense contracts as a result of improper dealings with a corrupt Congressman. *Id.* at 1482. The Supreme Court rejected this argument, reasoning that disclosure of the rap sheet would not disclose anything about the actions of the Congressman, the Department of Defense, or any other government agen-

---

2. Exemption 7(C) excludes from the mandatory disclosure requirement records or information compiled for law enforcement purposes, "but only to the extent that the production of such [materials] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1988). The Court did not address the application of Exemption 6. Although the two exemptions involve somewhat different standards, *see Reporters Committee,* 109 S.Ct. at 1473, many of the general principles applicable to the two exemptions are the same. *See id.* at 1479.

cy or official, and, accordingly, the invasion of privacy that would result from disclosure was not justified by a public interest cognizable under FOIA. The Court emphasized that the purpose of FOIA is not the disclosure of information about private individuals but, rather, information about the government, its agencies, and its agents acting in the line of duty. *Id.*

Our holding here is not inconsistent with *Reporters Committee.* The Supreme Court in *Reporters Committee* refused to disclose certain information about an individual because the information did not shed any light on the government or a government agent. In other words, the release of the information would not have served a public interest as that term is used in the FOIA context. The Court stated that

> [FOIA's] purpose ... is not fostered by disclosure of information about private citizens that is accumulated in various governmental files *but that reveals little or nothing about an agency's own conduct.* In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records. Indeed, response to this request would not shed any light on the conduct of any Government agency or official.

*Id.* at 1481 (emphasis added).

Nothing in *Reporters Committee* precludes the possibility that a FOIA request about a private individual may involve legitimate public interests; that case only explains that in the typical case where an individual seeks information about another individual, legitimate FOIA purposes are not involved. We consider this to be an atypical case. The plaintiffs herein seek information about individuals that will help them to scrutinize what our government is doing and saying regarding Haitians who unsuccessfully attempt to flee to this country. This is an important public interest— the kind which Congress had in mind in framing FOIA. As the Court stated in

*Reporters Committee,* "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose." *Id.*

The government also relies heavily on the D.C. Circuit's decisions in *Federal Labor Relations Auth. v. United States Dept. of the Treas., Financial Management Serv.,* 884 F.2d 1446 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 863, 107 L.Ed.2d 947, 948 (1990), and *National Assn. of Retired Federal Employees v. Horner,* 879 F.2d 873 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990). Both cases involved FOIA requests for names and addresses of private individuals and whether Exemption 6 precluded disclosure. In both instances the D.C. Circuit concluded that disclosure would cause privacy invasions that were not justified by legitimate public interest in the information. In *Horner,* the court concluded that the information sought was not of any public interest, 879 F.2d at 879, and in *FLRA* the court found the public interest to be only slightly higher than in *Horner.* 884 F.2d at 1452–53. These cases are distinguishable from the instant case in that here the plaintiffs have identified a very strong public interest in the requested information that is sufficient to outweigh the privacy interest that will be infringed by disclosure.

After careful consideration, then, we conclude that the government has not demonstrated that disclosure of the Haitians' names and addresses "would constitute a clearly unwarranted invasion of personal privacy." It is a close question, but we are convinced that the invasion of privacy that will likely result from disclosure is outweighed by the strong public interest in the information. We have a duty to construe FOIA's disclosure provisions broadly and its exemptions narrowly, and to impose on the government the burden of proving that an exemption applies. Applying these standards, we conclude that the government has not demonstrated that the redacted information is exempt from disclosure by Exemption 6. Accordingly, we affirm the district court's ruling that the State

Department must disclose the redacted information.

### 2. Waiver of FOIA Exemptions

■ After the district court ruled on March 2, 1989, that the redacted information was not protected by Exemption 6 of FOIA, the State Department filed a motion to alter or amend the judgment, arguing for the first time since this action was filed in June 1987 that the redacted information is also exempt from disclosure by Exemptions 1, 7(C), and 7(D) of FOIA.[3] The district court declined to rule on the merits of these claims, finding that the government waived them by not asserting them in its answer or at any time prior to the district court's judgment. *Ray*, 725 F.Supp. at 505–06.

The government now argues that the district court erred in finding that it waived these exemptions and asks this court to reach the merits of these issues. The government explains that its failure to timely raise the additional exemption claims was the result of pure mistake and that this court should decide these issues because they involve grave concerns of national security and foreign policy. The government relies primarily on *Jordan v. United States Dept. of Justice*, 591 F.2d 753 (D.C.Cir.1978) (en banc), where the D.C. Circuit stated that an appellate court has the discretion to reach the merits of a FOIA exemption not raised before the district court if the failure to raise it was due to pure mistake, the value of the material is very high, and it appears highly likely that the exemption does apply. *Id.* at 780.

■ We agree that courts have some discretion to excuse untimeliness where justice so requires, but we do not believe that this is such a case. We find it difficult to believe that the redacted information implicates compelling national security concerns in light of the government's failure *for almost two full years* to bring these concerns to the attention of the court or the plaintiffs. We find no circumstances in this case that warrant not applying the fundamental rule that a defendant must

"allege all affirmative defenses in a responsive pleading and the failure to do so will normally result in waiver." *Chilivis v. Securities and Exchange Comm'n*, 673 F.2d 1205, 1208 (11th Cir.1982). Thus, we affirm the district court's ruling that the State Department waived its Exemption 1, 7(C), and 7(D) arguments and, accordingly, we need not reach the merits of those claims. *See also Senate of Puerto Rico v. United States Dept. of Justice*, 823 F.2d 574, 580 (D.C.Cir.1987) and cases cited therein (explaining that courts should not allow government to raise FOIA exemptions in a piecemeal fashion).

### B. *The Plaintiffs' Cross–Appeal*

#### 1. Class Certification

The plaintiffs argue on cross-appeal that the district court abused its discretion by refusing to certify a class pursuant to Federal Rule of Civil Procedure 23. The plaintiffs proposed to define their class as follows: "all black Haitian citizens presently under exclusion or deportation proceedings, or under final orders of exclusion or deportation, or who will be under such proceedings or orders in time to join this class, and who have or who will present a claim for political asylum before the immigration judges." Second Amended Complaint at 3.

■ Federal Rule of Civil Procedure 23(a) sets out the following requirements for the certification of a class: (1) numerousity; (2) commonality; (3) typicality; and (4) adequacy of representation. Considerable discretion is afforded the district court on questions regarding class certification. We review the district court's decision only to determine whether it has abused its discretion. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir.1985).

■ We find no abuse of discretion in this case. The plaintiffs do not make clear for what purpose they want a class certified—that is, whether they seek certifica-

---

**3.** *See* footnote 1.

tion for their FOIA claim or their claim for injunctive relief. Certifying a class for the plaintiffs' FOIA claims in this case would serve no purpose because information released to a plaintiff under FOIA is equally available to any person who requests it. *See National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975).

 Apparently the plaintiffs seek class certification for purposes of their request for an injunction against their exclusion and deportation proceedings. We note that the named plaintiff who seeks to represent the class, Michael Ray, does not appear to be an adequate representative in that he has not alleged that he is a Haitian citizen who is facing deportation or exclusion proceedings or who is seeking political asylum in the United States. He is an attorney who represents Haitians facing action by the INS. In any event, because we affirm the district court's denial of the plaintiffs' request for an injunction, the question of whether a class should be certified for that purpose is mooted.

### 2. Adequacy of FOIA Searches

 The plaintiffs next argue that the district court erred in ruling that neither the INS nor the State Department improperly withheld documents from them. The adequacy of an agency's search for documents requested under FOIA is judged by a reasonableness standard. *Miller v. United States Dept. of State*, 779 F.2d 1378, 1383 (8th Cir.1985). Under this standard, the agency need not show that its search was exhaustive. Rather, " 'the agency must show beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents.' " *Id.* (quoting *Weisberg v. United States Dept. of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983) ). The government agency may meet this burden by producing affidavits of responsible officials "so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Miller*, 779 F.2d at 1383 (citation omitted). If the government agency meets its burden of proving that its search was

reasonable, then the burden shifts to the requester to rebut the agency's evidence by showing that the search was not reasonable or was not conducted in good faith. *Id.*

 We first address the adequacy of the State Department's search. As stated above, the district court ruled that the State Department complied with FOIA by releasing the 25 documents, pending its production of the redacted information. The plaintiffs claim that the State Department should have been required to produce more information. Specifically, they rely on a State Department report submitted to the district court entitled "Country Reports on Human Rights Practices for 1985," where reference is made to interviews of 582 Haitian returnees regarding their treatment after returning to Haiti. The plaintiffs complain that the documents turned over by the State Department provide information about only 395 such interviews and insist that there must exist documentation on the other 187 interviews.

The State Department submitted the affidavit of Frank Machak, Chief of the State Department's Information Access and Services Division. He explained that in response to Ray's request for information relating to interviews conducted of Haitian returnees by U.S. officials, the State Department searched the records of the Department's Office of Visa Services, the Bureau of Refugee Programs, and the Bureau of Human Rights and Humanitarian Affairs, and found no relevant records. However, responsive documents were found in a search of the Central Foreign Policy Records. That is the source of the 25 documents provided to the plaintiffs. Mr. Machak further explained that regarding Ray's request for the names of 600 Haitian returnees the State Department searched the same offices, as well as the Bureau of Inter–American Affairs. No relevant documents were found. See Record, Vol II, Exhibit L, Affidavit of Frank Machak.

We are satisfied that the State Department conducted a search reasonably calculated to uncover all requested materials. As explained above, FOIA does not require

an agency to exhaust all files which conceivably could contain relevant information. The standard is one of reasonableness, and, based on the affidavits provided by the State Department, we conclude that that standard is met here. The plaintiffs' emphasis of a particular reference to 582 interviews, while they received information regarding only 384 interviews, is not enough to rebut the government's showing of an adequate search. In a similar context, the Eighth Circuit has noted that

> [t]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Thus, the [agency] is not required by [FOIA] to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found; it is not necessary "to create a document that does not exist in order to satisfy a [FOIA] request."

*Miller,* 779 F.2d at 1385 (quoting *Yeager v. Drug Enforcement Administration,* 678 F.2d 315, 321 (D.C.Cir.1982)).

Here, we have evidence of a diligent search that uncovered a good portion of what the requesters sought. The plaintiffs have not convinced us that the State Department did not make a reasonable attempt to find the documentation of the other interviews; for that matter, they have not convinced us that documentation was even made of each individual interview. We hold that the State Department complied with the requirements of FOIA in producing the 25 documents to the plaintiffs, subject, of course, to our affirmance of the district court's order that it supply the redacted information.[4]

The plaintiffs did not present argument in their appellate brief regarding the adequacy of the INS' search. Nor did they submit argument regarding the dismissal of their FOIA claim against the EOIR on the ground that no FOIA request was ever made to the EOIR. It is the government's impression that the plaintiffs have abandoned their claims against the INS and the EOIR. *See* Initial Brief for the Government Agencies at 7 n. 2. The plaintiffs do, however, appear to appeal the district court's rulings on these issues because in their appellate brief they request this court to reverse the district court's grant of summary judgment to the INS and the EOIR. *See* Brief of Appellees–Cross Appellants at 32. Thus, we address these issues.

 We have reviewed the record and are satisfied that the district court was correct in granting summary judgment to the INS and the EOIR. A plaintiff in a FOIA suit must show that an agency improperly withheld agency records. *Kissinger v. Reporters Committee,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980). Clearly, if a FOIA claim has not been made to an agency, that agency cannot be said to have improperly withheld documents. The plaintiffs admit that they did not submit a FOIA request to the EOIR. Brief of Appellees and Response of Cross–Appellants at 35. Thus, the claim against that agency was properly dismissed.

 Our review also convinces us that the district court correctly ruled that the INS' search was reasonable. In response to the plaintiffs' requests, the INS stated that it did not conduct investigatory trips to Haiti and thus did not have reports of such trips. The INS contacted the person quoted in the newspaper article regarding a list of 600 Haitian returnees; he stated

---

**4.** The State Department points out that the reason for the discrepancy in the number of interviews may be that it reasonably construed the plaintiffs' requests to require production of documents for only approximately the first half of 1985, and the reference in the State Department report to 582 interviews covered the first nine months of 1985. The State Department states that it will construe the plaintiffs' brief in this case as a new FOIA request for any additional documents covering the interviews mentioned in the 1985 Country Reports. *See* Initial Brief for the Government Agencies at 26–27 n. 11. Thus, it appears that the plaintiffs can and will receive the information they desire. Despite that, we rule that the State Department's conduct in this case complied with FOIA because we are convinced that it performed a search that was reasonably calculated to locate the requested documents.

that he was misquoted in the article and did not have such a list. *See* Record, Vol. I, Government Exhibits F, G, H. We are satisfied that the INS conducted a reasonable search, and the plaintiffs have not put forth specific evidence to the contrary. Thus, there exists no genuine issue of material fact as to the adequacy of the INS' search.

The district court's grant of summary judgment to the INS and the EOIR is affirmed.

3. Injunctive Relief

■ We next address the plaintiffs' claim that the district court abused its discretion in failing to grant injunctive relief from their deportation and exclusion proceedings. The plaintiffs claim that until they receive the information they requested from the INS and the State Department they are unable adequately to defend themselves in their political asylum hearings before the EOIR. Thus, they requested the district court to "enjoin the final deportation and exclusion hearings of the members of the plaintiff class until such time as defendants have provided the FOIA requested information and for a period of at least six (6) months thereafter, so plaintiffs can study; analyze and verify defendants' reports as to what happens to returnees to Haiti." Second Amended Complaint at 14. The district court refused to grant an injunction, noting that it had "no authority to enjoin [the plaintiffs' INS deportation proceedings] under the FOIA or the Administrative Procedure Act, Title 5 U.S.C. sec. 704–706." *Ray*, 725 F.Supp. at 505 n. 3.

We are not convinced by the plaintiffs' argument that the district court's ruling in this regard was an abuse of discretion. The remedies that courts are authorized to grant in FOIA cases are expressly enumerated in FOIA, and they do not include the issuance of an injunction against related agency action. Under FOIA, the district court may: (1) enjoin an agency's withholding of documents and order production of relevant records where it has been found that information is being improperly withheld, 5 U.S.C. § 552(a)(4)(B) (1988); (2) as-

sess against the United States attorney fees and other litigation expenses in cases where the plaintiff prevailed, 5 U.S.C. § 552(a)(4)(E) (1988); (3) discipline an agency official guilty of arbitrary and capricious action, 5 U.S.C. § 552(a)(4)(F) (1988), and (4) use its contempt power to punish an agency official for disobeying a disclosure order, 5 U.S.C. § 552(a)(4)(G) (1988). FOIA does not expressly provide the district courts with jurisdiction to enjoin agency proceedings that may be related to the subject matter of a plaintiff's FOIA request, and we are aware of no authority that has inferred such a power.

■ The plaintiffs also argue that the district court had authority to enjoin INS proceedings under the Administrative Procedure Act and cite us to 5 U.S.C. §§ 704 & 706 (1988). Neither of those provisions authorizes the injunctive relief that the plaintiffs seek here. Those provisions deal with final agency action and agency action made reviewable by statute.

As the defendants point out, in some limited circumstances federal courts have allowed suits directly attacking the processing of aliens notwithstanding the exhaustion requirements of 8 U.S.C. § 1105a(c) and notwithstanding the absence of a final administrative order. *See, e.g., Jean v. Nelson*, 727 F.2d 957, 979–81 (11th Cir.) (judicial intervention allowed prior to final agency decision in order to enjoin widespread practice of denying claimants' notice of their right to present asylum claim to particular agency), *cert. denied*, 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1033 (5th Cir.1982) (claims of "a pattern and practice by immigration officials to violate the constitutional rights of a class of aliens ... constitute wrongs which are independently cognizable in the district court under its federal question jurisdiction" (footnote omitted)).

Those cases do not support judicial intervention in this case. In *Smith* and *Jean*, the court authorized judicial review of INS proceedings prior to exhaustion because of the unique circumstance that the plaintiffs were claiming widespread, systematic

wrongs in their exclusion proceedings. *See Jean,* 727 F.2d at 980; *Smith,* 676 F.2d at 1033. Further, in those cases, by delaying the assertion of their claims until after they exhausted agency remedies the plaintiffs, under their particular circumstances, would have completely foregone the opportunity to assert their claims. *See Jean,* 727 F.2d at 980; *Smith,* 676 F.2d at 1035.

That is not the case here. The plaintiffs do not allege that they are being subjected to broadly applied procedures in their exclusion proceedings that somehow render those proceedings illegal. Nor do they claim that if they pursue their administrative remedies they will have lost the opportunity to present their evidence that they would face persecution if returned to Haiti. The INS provides them with adequate opportunities to rebut evidence that they will not be subject to ill treatment. *See* 8 C.F.R. § 208.8(d) (1989). And, if they acquire evidence after their proceedings that they believe would have helped their case, there are means by which they can cause their case to be reopened for the consideration of such evidence. *See* 8 C.F.R. § 3.2 (1989).

In light of the avenues available to the plaintiffs, and in light of the important policies underlying the exhaustion doctrine, *see Smith,* 676 F.2d at 1034, we believe that the district court acted properly in refraining from entering an injunctive order delaying the plaintiffs' deportation and exclusion proceedings pending the government's compliance with their FOIA requests. The district court's denial of the plaintiffs' request for an injunction is thus affirmed.

## III. CONCLUSION

We affirm the district court's decision in all respects. Accordingly, the State Department is ordered to release, within fifteen days of entry of this order, the information that it redacted from 17 of the 25 documents provided to the plaintiffs pursuant to FOIA. All remaining claims against the State Department, the INS, and the EOIR are dismissed.