Thomas C. HAYDEN, Plaintiff,

v.

U. S. DEPARTMENT OF JUSTICE et al., Defendants.

Civ. A. No. 76–0288.

United States District Court, District of Columbia.

May 21, 1976.

---

Ira M. Lowe, Martin S. Echter, Washington, D. C., for plaintiff.

Lynne K. Zusman and Paul F. Figley, U. S. Dept. of Justice, Civil Div., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

■ This matter now is before the Court on defendants' Motion To Stay Pending Completion Of Review, and plaintiff's opposition thereto. The instant action is a proceeding under the Freedom of Information Act, (FOIA) 5 U.S.C. § 552 *et seq.* to enjoin the Federal Bureau of Investigation (FBI) from wrongfully withholding requested records and documents. Plaintiff Tom Hayden filed an FOIA request with the FBI on April 9, 1975, seeking all information, references, or materials relating to or concerning himself. Thirty-five working days later (May 28, 1975) FBI Director Clarence M. Kelley acknowledged receipt of the request and advised Mr. Hayden of the existence of several main files and numerous cross-references. Director Kelley's first response to Mr. Hayden was in and of itself a violation of the FOIA in that the Director failed to respond to the request in a timely fashion, 5 U.S.C. § 552(a)(6)(A). Acknowledging the violation, Director Kelley stated that a review of the files had begun and promised that some relevant material would be released within sixty days. Approximately one month after the sixty days had expired (October 6, 1975) Director Kelley, in response to inquiries from Mr. Hayden, stated that a heavy volume of FOIA requests combined with court-imposed deadlines was responsible for the substantial delay in processing. Director Kelley again assured Mr. Hayden that all documents which could be released would be made available at the earliest possible date. Approximately two weeks later (October 14, 1975) plaintiff directed an appeal to the Attorney General. By letter dated November 17, 1975 the Attorney General's office acknowledged receipt of the appeal and advised Mr. Hayden that no action could be taken as the scope of appellate administrative review was limited to review of claimed exemptions. The letter also advised Mr. Hayden that he could treat the response as a denial and bring an action in Federal District Court, 5 U.S.C. § 552(a)(6)(C), and renewed the FBI's request for patience. On November 6, 1975 (after receipt of plaintiff's appeal but prior to its denial) the FBI released 140 documents to Mr. Hayden.

Mr. Hayden was aware both that the FBI was "deluged" with FOIA requests and that due to his involvement as co-founder of Students For A Democratic Society as well as his anti-war and civil rights activities the FBI would probably possess a substantial amount of material responsive to his request. For this reason, as well as the apparent attempt at compliance through the initial release of documents, he waited five additional months. When the FBI failed to respond further, he brought this action. Rather than answering the complaint within the statutory limit of thirty days, 5 U.S.C. § 552(a)(4)(C), the FBI has filed this motion to stay pursuant to 5 U.S.C. § 552(a)(6)(C). That section states in relevant part:

"If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."

■ As in any FOIA proceeding, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). Thus to prevail on its motion the FBI must show that (1) exceptional circumstances exist and (2) that it is exercising due diligence in responding to the request. This burden must be seen in the light of the overall purpose of the Act, which " . . . seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 128 (1973). The Court finds the FBI's justification to be insufficient, in light of the high

standard imposed by the Act, §§ 552(a)(6)(C), 552(a)(4)(B), 552(a)(3), to warrant granting the extraordinary relief requested. Since Mr. Hayden's request a little over a year ago, the FBI has located nine files consisting of a total of 114 volumes and containing an estimated 18,000 pages responsive to Mr. Hayden's request. Of these the FBI has reviewed and processed six volumes containing an estimated nine hundred pages of material. Of the nine hundred pages reviewed, one hundred forty pages have been released. No documents have been released in the last six months. The FBI now requests an indefinite stay, and informs the Court that assuming there are no unforeseen circumstances (which the Court understands to mean that the rate of FOIA requests will remain the same and the number of court orders will not increase), it will take the Bureau *four years* to process Mr. Hayden's request.

The Bureau's claim that this is a case involving exceptional circumstances is based on the large number of documents found responsive to plaintiff's request and the pendency of numerous other FOIA requests and court orders enforcing those requests. While the Court agrees that under certain conditions an abnormally large number of responsive documents might constitute an exceptional circumstance, it is not entirely persuaded that the basis for the Bureau's claim, i. e. many unfilled requests and several court orders compelling compliance, constitutes such circumstances within the meaning of the Act.

 As to the claim of "due diligence," the Court is unable to square the Bureau's request for a four year suspension of the Act with any concept of that term.

In any event the Bureau's extraordinary request is completely out of line with the purposes of the Act, and must be denied.

 The FOIA was intended by Congress to enable individuals to inform themselves of their government's activities, and the time provisions of the Act are central to its purpose.

When Congress amended the Act in 1974, one of its primary objectives was to "expedite the handling of requests from Federal agencies in order to contribute to the fuller and faster release of information, which is the basic objective of the Act." H.Rep. No. 93–876, 93rd Cong., 2d Sess. (1974), U.S. Code Cong. & Admin.News, p. 6267. The House committee put it succinctly: "excessive delay by the agency in its response is often tantamount to denial. It is the intent of the bill that the affected agencies be required to respond to inquiries within specific time limits." H.Rep. No. 93–876, *supra* at p. 6271. The Department of Justice opposed the time limits set in the original House bill, because files often "cannot be obtained within the ten days either because the filing systems are impervious to the description of the information requested or because the files are located in centers distantly located from the office receiving the request." *Id.* at pp. 6278–6279. The Department also expressed a fear that the FBI would be required to divert personnel from other activities, which it characterized as "emergencies", in order to comply with the time limits set in the House bill. *Id.* at p. 6279.

 As a result of concern over the rigid ten-day limit in the House bill, the Senate and House conferees finally adopted a compromise which retained the ten and twenty-working-day administrative deadlines but allowed a ten-working-day extension for "unusual circumstances", such as where the requested records come from separate field facilities, where the agency must *"search for, collect, and examine a voluminous amount of separate and distinct records demanded in a single request,"* or where consultation with another agency is necessary. Senate Conference Rep. No. 93–1200, U.S.Code Cong. & Admin.News 1974, *supra*, at p. 6289 (emphasis added). In other words, in situations like the present one, where voluminous materials must be processed, the applicable provision is 5 U.S.C. § 552(a)(6)(B), not § 552(a)(6)(C). And as the original Senate report indicates, the "exceptional circumstances" time extension is to be allowed only "where the agency is

clearly making a diligent, good-faith effort to complete its review of requested records but could not practically meet the time deadlines" set by the Act. S.Rep. No. 93–854, 93rd Cong., 2d Sess. (1974), p. 26. That the "exceptional circumstances" provision should not apply to the instant situation is made even more clear by an example given by the Senate committee in discussing a provision added by the Senate bill (and deleted by the Conference committee as unacceptable) which would, in addition to the "exceptional circumstances" provision, have allowed a thirty-day time extension in "a small class of special and rare situations" where the initial response time of ten days is inadequate to locate documents. The committee cited as such an example the Immigration and Naturalization Service, which processes an average of 90,000 formal requests for records each year, most of which seek access to one or more of the twelve million individual files scattered among and frequently transferred between 57 field offices and 10 Federal Records Centers. The thirty-day extension, which would have had to be approved by the Attorney General, would not have been available to agencies "that simply processed large volumes of requests or frequently faced novel questions of legal interpretation . . . nor could agencies or parts of agencies utilize [the provision] *simply because they had been unable to regularly meet standard deadlines,* without a showing of the geographical and other concrete obstacles to the location of the files present in the INS example." \* (Emphasis added.) The Congress was thus unwilling, even in proposing a provision later deleted as too lax, to permit an agency in the Bureau's present posture to receive an extension of time for initial document processing, and even those extensions that were to be permitted were to be for thirty days, not four years. In sum, the legislative history of the 1974 amendments leave no doubt that the Bureau's request is not even remotely compatible with the Act or the intent of Congress. The section upon which the Bureau relies (5 U.S.C. § 552(a)(6)(C)), is not intended to convert the federal courthouse into a haven of refuge from the time pressures of the Act, where stringent legal requirements are finally subordinated to administrative convenience.

Accordingly, it is by the Court this 21st day of May, 1976,

ORDERED:

1) That defendants shall, not later than September 1, 1976, release to plaintiff all material responsive to his request for which defendants do not claim an exemption;

2) That by September 15, 1976 defendants shall prepare and serve upon plaintiff an itemized indexed inventory of each and every document responsive to plaintiff's request and not released to plaintiff, which inventory shall set forth with respect to each such withheld document the nature of the information contained therein, as well as a detailed justification for the refusal to release such document, as provided in *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820. The justification with respect to each document shall be detailed, non-conclusory, and shall provide such factual and evidentiary material as may be required to show that the document is exempt from disclosure, as well as a citation to the specific exemption claimed;

3) That defendants shall by September 15, 1976, file an answer or otherwise plead in this case; and

4) That defendants' motion in all other respects be, and hereby is, denied.

---

\* Id. at 26–27.