**Michael D. RAY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION & NATURALIZATION SERVICE, Defendant.**

**No. 89–0288–CIV–RYSKAMP.**

United States District Court,
S.D. Florida,
Miami Division.

Dec. 17, 1990.

Michael D. Ray, Miami, Fla., for plaintiff.

Dexter A. Lee, Asst. U.S. Atty., Miami, Fla., for defendant.

### FINAL JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE came before the court for trial on April 5, 1990 and April 30, 1990. Having considered the testimony and other evidence presented, the court enters its findings of fact and conclusions of law.

### I. BACKGROUND

Plaintiff brings this action under the Freedom of Information Act, 5 U.S.C.A. § 552, *et seq.* (West 1977) ("FOIA"), to compel the United States Department of Justice, Immigration and Naturalization Service ("INS"), to produce specific agency records, concerning the results of interviews with Haitian nationals who have been involuntarily returned to Haiti. Pursuant to 5 U.S.C.A. §§ 702 and 706(1) (West 1977), plaintiff seeks a permanent mandatory injunction requiring the INS to comply with the FOIA time limits provided by statute.

In *Ray v. U.S. Dept. of Justice,* 908 F.2d 1549 (11th Cir.1990), the Eleventh Circuit resolved one of the issues which is now before this court. In that case, plaintiffs sought names and addresses of Haitians who had been interviewed by State Department personnel regarding the Haitian government's treatment of citizens who were returned to Haiti after an unsuccessful attempt to flee to the United States. Plaintiffs requested this information on whether or not the Haitian government was persecuting Haitian returnees for use in deportation proceedings. Refusing to disclose the information, the government

claimed an exemption under 5 U.S.C.A. § 552(b)(6) (West 1977), which provides that FOIA's mandatory disclosure requirement does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(6). Applying a balancing test, the Eleventh Circuit ruled that disclosure was mandated because the privacy interest was outweighed by the strong public interest in the information. *Ray v. U.S. Dept. of Justice*, 908 F.2d. 1549, 1556.

In the case at hand, the facts pertaining to this issue are almost identical. Plaintiff, an immigration attorney, is seeking information pertaining to State Department interviews conducted with Haitians who had unsuccessfully attempted to flee to the United States and had been returned to Haiti. As in the Eleventh Circuit decision cited above, Plaintiff claims that he needs the information regarding the Haitian government's treatment of Haitian returnees to assist clients in deportation proceedings. The government contends that the information is exempt from disclosure under 5 U.S.C.A. § 552(b)(6).

The court finds the Eleventh Circuit opinion regarding the government's claim of exemption controlling. Adopting the decision, the court holds that disclosure is mandated in the instant case. The only issue before the court is whether the court should issue a permanent mandatory injunction to compel the INS to process FOIA requests within the time allotted by statute.

## II. FINDINGS OF FACT

The Miami District Office of the INS has a Freedom Of Information Act/Privacy Act ("PA") section which handles all FOIA and PA requests pertaining to records maintained in the Miami District Office. The FOIA/PA section has a first-in, first-out system to process the large numbers of requests received.

Plaintiff claims that the Miami INS office has a pattern and practice of not responding to FOIA requests in the time period designated by 5 U.S.C.A. § 552(a)(6)(A) (West 1977). The statute mandates that each agency "determine within ten days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor ..." 5 U.S.C.A. § 552(a)(6)(A). Plaintiff has introduced numerous exhibits into evidence which demonstrate that the INS has failed to make a determination on requested records within the time period allotted by statute. Several immigration attorneys testified at trial that they have regularly filed FOIA requests with the Miami INS office and that they have experienced repeated delays. In a letter to a requester dated July 27, 1990, the INS concedes delay: "We are receiving a large number of requests and cannot always respond promptly ... We ask your patience and understanding of any delay." The evidence further establishes that the Miami INS office routinely sends FOIA requesters computer-generated extension letters, in which the INS invokes an additional ten-day extension, pursuant to 5 U.S.C.A. § 552(a)(6)(B) (West 1977). In a number of instances, this ten-day extension was invoked repeatedly, and the delays in responses to FOIA requests were often several months.[1] Based on the evidence presented, the court concludes that the delay can be characterized as a general pattern and practice in responding to FOIA requests.

The INS does not dispute that it has failed to respond to numerous FOIA requests within the ten-day period mandated by statute. It claims that the delay in responding to FOIA requests is due to the

---

1. 5 U.S.C.A. § 552(a)(6)(B) allows for a ten-working-day extension under "unusual circumstances" and specifically states: "No such notice shall specify a date that would result in an extension for more than ten working days." As is evident by this plain language as well as the legislative history discussed below, the Miami District Office of the INS has improperly invoked more than one such ten-day extension in response to a single FOIA request.

ever growing volume of requests received annually, resulting in a larger backlog.[2] The INS relies on 5 U.S.C.A. § 552(a)(6)(C) (West 1977) which provides: "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." The INS contends that the large backlog constitutes "exceptional circumstances" and that it has exercised "due diligence" by implementing a first-in, first-out system to process the requests.

The questions presented are whether a large increase in the number of requests resulting in a backlog constitutes "exceptional circumstances" within the meaning of the statute and whether the INS has exercised "due diligence" in processing the requests. The court will first briefly review the legislative history of the statute and then discuss cases that have interpreted the terms "exceptional circumstances" and "due diligence."

### III. LEGISLATIVE HISTORY

The purpose of FOIA is to enable individuals to obtain information about the government's activities. The 1974 Amendments to the bill were drafted to expedite the slow processing of the FOIA requests. "[E]xcessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits." H.Rep. No. 876, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6267, 6271.

Due to agencies' objections regarding the rigid ten-day time requirements imposed by the House bill, Congress approved a ten-working-day extension for "unusual circumstances." 5 U.S.C.A. § 552(a)(6)(B). The provision provides for a ten-day extension for the completion of an agency's response to a request in the following situa-

tions: where the requested records come from other field offices, where a "voluminous" amount of records is involved in a single request or where the agency must consult with another agency. "This 10–day extension may be invoked by the agency only once—either during initial review of the request or during appellate review." S.Conf.Rep. No. 1200, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6285, 6289. Thus, the maximum statutory time period to respond to a request is twenty working days.

Congress' intent to hold agencies to these statutory time limits is evident in its rejection of a thirty-day extension provision. The extension would have applied to agencies such as the INS that process an extremely large number of requests each year. Although the Senate Committee emphasized the narrow application of this provision (*see* S.Rep. No. 854, 93rd Cong., 2d Sess. 26–27 (1974)), Congress was unwilling to allow the thirty-day extension. Realizing, however, that a rare situation could occur in which an agency could not respond to the request in a timely manner, Congress approved the "exceptional circumstances" exception (5 U.S.C.A. § 552(a)(6)(C)), whereby courts could grant an extension of time to the agency to respond to the request.

### IV. INTERPRETATION OF EXCEPTIONAL CIRCUMSTANCES

In support of its position, the INS relies on *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C.Cir. 1976), the first appellate decision to interpret the § 552(a)(6)(C) exception. In that case, plaintiffs sought disclosure of information by the Watergate Special Prosecution Force and the Federal Bureau of Investigation under FOIA. The issue before the court involved the interpretation of the statutory time constraints within which the agencies were required to process the requests for information. *Id.* at 608.

---

**2.** The Miami INS FOIA/PA officer testified that the backlog of FOIA Requests is due to the

steady increase in requests since 1985.

The court construed § 552(a)(6)(C) broadly to mean that "exceptional circumstances" exist when an agency is overwhelmed with information requests which far exceed that envisioned by Congress, when the existing resources are insufficient to respond to the requests within the statutory time period and when the agency can demonstrate that it is exercising "due diligence" in processing the requests. *Id.* at 616. The court determined that the F.B.I. had demonstrated "due diligence" by handling requests on a first-in, first-out basis, absent a showing of some exceptional need or urgency for the information which would justify putting the plaintiffs' request ahead of all other requests. After an extensive review of the legislative history, the court stated it believed that Congress intended the courts to intervene in two instances: "(1) when the agency was not showing due diligence in processing plaintiff's individual request or was lax overall in meeting its obligations under the Act with all available resources, and (2) when plaintiff can show a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." *Id.* at 615–16. The case was remanded to the district court for a determination of whether "exceptional circumstances" were present under the statute. *Id.* at 616.

Judge Leventhal concurred in the result, but sharply criticized the majority opinion's expansive interpretation of the "exceptional circumstances" exception. Acknowledging that FOIA requests had "increased at a rate entirely unforeseen and unforeseeable," *id.* at 617, and that there was no allegation of urgency, the judge noted that the exception may apply in that case. *Id.* at 618. However, he cautioned that the implication of the majority's interpretation was that the government agency could invariably invoke this broad defense. He questioned "what impetus will remain for agencies to adjust to the explicit time limits imposed by Congress if the Act is interpreted to grant them leeway so long as requests are processed in the order of their arrival." *Id.* at 621. Emphasizing the legislative intent in enacting the strict time limit provisions, Judge Leventhal concluded that a narrower construction of the statute is mandated. *Id.* at 621.

The Ninth Circuit approved Judge Leventhal's narrower interpretation of "exceptional circumstances." *See Exner v. Federal Bureau of Investigation,* 542 F.2d 1121 (9th Cir.1976). Several district courts have followed Judge Leventhal's approach and have interpreted "exceptional circumstances" to be a more limited defense available to the government agency. Specifically, several cases have held that a great number of requests alone does not constitute "exceptional circumstances" within the meaning of the statute. *See Caifano v. Wampler,* 588 F.Supp. 1392 (N.D.Ill. 1984); *Hamlin v. Kelley,* 433 F.Supp. 180, 182 (N.D.Ill.1977); *Hayden v. U.S. Dept. of Justice,* 413 F.Supp. 1285 (D.D.C.1976). One district court ruled that "inadequate staff, insufficient funding or a great number of requests are not within the meaning of exceptional circumstances ... nor were they within the contemplation of its framers as evidenced by the legislative history." *Hamlin v. Kelley,* 433 F.Supp. 180, 182 (N.D.Ill.1977). The court further reasoned:

> References throughout the Senate Report [S.Rep. No. 93–854] indicate time and again that the Congress intended to eliminate the very conduct which defendants now claim should excuse them from prompt compliance ... The fact of pervasive non-compliance as an argument to justify and sustain further non-compliance is bad law and worse logic. Congress established strict time limits to prevent the present practices of defendants, and it is Congress' decision in law and not the agencies in delay which governs this case.

[*Id.* at 182.] Similarly in *Caifano v. Wampler,* 588 F.Supp. 1392 (N.D.Ill.1984), the court held that the fact that an agency was doing the best it could with its "limited resources" and "limited personnel" to cope with a "crushing number of FOIA requests" did not constitute "exceptional circumstances." *Id.* at 1394. Rejecting the analysis of the majority in *Open America,* the court stated:

[s]o long as an agency could show that it had received more requests than it could handle, and that it was proceeding diligently—and we would be surprised if most agencies could not show this—then it would not be obliged to comply with the ten-day requirement. This interpretation would render the ten-day clause a non-entity. It seems unlikely that Congress intended such a result.

[*Id.* at 1394.] Another district court ruled that the "exceptional circumstances" exception was inapplicable where the Federal Bureau of Investigation was "deluged" with FOIA requests, and stated that § 552(a)(6)(C) is "not intended to convert the federal courthouse into a haven of refuge from the time pressures of the Act, where stringent legal requirements are ... subordinated to administrative convenience." *Hayden v. U.S. Dept. of Justice,* 413 F.Supp. 1285, 1289 (D.D.C.1976).

Plaintiff urges the court to follow *Mayock v. I.N.S.,* 714 F.Supp. 1558 (N.D.Cal. 1989), where the court held that a "routine administrative backlog" did not constitute "exceptional circumstances" within the meaning of the statute. *Id.* at 1565–66. In *Mayock,* the court addressed the identical issue presented here. An immigration attorney brought an action against the INS seeking an injunction with respect to the agency's "pattern and practice" in responding to FOIA requests. Plaintiff alleged that the INS failed to comply with the statutory ten-day requirement. *Id.* at 1560.

Reviewing the facts, the court noted that the plaintiff had presented "substantial evidence" demonstrating that lengthy delays were "systematic." *Id.* at 1561. The court determined that the issue was "whether a routine administrative backlog constitutes 'exceptional circumstances.'" *Id.* at 1565. Declaring that it "has difficulty finding that a normal, predictable workload is an 'exceptional circumstance' ..." *id.* at 1565, the court reiterated the concern expressed in *Caifano v. Wampler,* 588 F.Supp. 1392, 1394 (N.D.Ill.1984), that a broad interpretation of "exceptional circumstances" would render the ten-day statutory requirement a "non-entity." *Mayock,* 714 F.Supp. at 1566. The court concluded that the agency could not invoke the § 552(a)(6)(C) "exceptional circumstances" defense for delays which "result from the ordinary course of business in processing FOIA requests." *Id.* at 1566.

■ The facts in *Mayock* are strikingly similar to the instant case. As stated above, it is undisputed here that the INS has failed to respond to FOIA requests in a timely manner. As in *Mayock,* the backlog is a result of an increase in the number of requests made to the INS in the past few years. The court finds the reasoning in Judge Leventhal's concurrence and the district court decisions cited above persuasive and determines that a narrower construction of the "exceptional circumstances" exception is consistent with legislative intent.

Moreover, the court finds that *Open America* can be distinguished on the basis of the scope of the request involved. In that case, the FOIA requests were for "all documents and files relating to the role of the former Acting Director of the FBI, L. Patrick Gray, in any aspect of the so-called 'Watergate Affair.'" *Open America,* 547 F.2d at 608. The *Open America* court noted that the FOIA request was identified as a "project request," and it involved the review of over 38,000 pages. *Id.* at 612. The "exceptional circumstances" exception has been applied where a single request is unusually large or complicated. *See Reagan Bush Committee v. Federal Election Commission,* 525 F.Supp. 1330 (D.D.C.1981) (wide scope of request constituted "exceptional circumstances"). In the case at hand, the INS does not contend that the individual FOIA requests at issue are unduly large in scope. Indeed, there is no evidence here that the requests involve the massive quantity of pages handled in *Open America.*

Therefore, in light of the foregoing analysis, the court holds that the backlog of FOIA requests does not constitute "exceptional circumstances" within the meaning of § 552(a)(6)(C).

## V. DUE DILIGENCE

The second prong of the analysis of the § 552(a)(6)(C) exception involves the interpretation of the term "due diligence." In determining whether the government has exercised "due diligence," courts have considered whether the agency processes urgent requests in an expedited manner.

The concept of urgent or exceptional need was first discussed in the majority's opinion in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976). The court found that a plaintiff's exceptional need or urgency in gaining access to the government records was an appropriate factor to consider in evaluating the agency's compliance with the statute. "We believe that Congress intended for a district court to require an agency to give priority to a request for information if some exceptional need or urgency attached to the request justified putting it ahead of all other requests received by the same agency prior thereto." *Id.* at 615.

Applying this reasoning, a district court held that where the plaintiffs needed the information for an upcoming criminal trial, an exceptional and urgent need was present which justified placing plaintiffs' request ahead of other requests. *Cleaver v. Kelley*, 427 F.Supp. 80 (D.D.C.1976). A court in this district found urgent need where a legal organization requested information to assist aliens in filing applications for lawful immigration status, and the court ruled that the INS was required to give processing priority to the plaintiff's request. *Florida Rural Legal Services v. U.S. Dept. of Justice*, No. 87–1264 (S.D.Fla. Feb. 10, 1988).

Plaintiff contends that urgency is present here because plaintiff needs the information for clients' deportation and exclusion proceedings. Plaintiff argues that the court should follow the approach taken in *Mayock v. I.N.S.*, 714 F.Supp. 1558 (N.D.Cal.1989), where the court interpreted the "due diligence" test to be based on whether the agency had given due consideration to the urgency of the request. The court found that the agency had not exercised "due diligence" in that it had no priority system in place for giving preference to requests for information that was urgently needed in deportation and exclusion hearings. *Id.* at 1566. Accordingly, the court concluded that the FOIA requests for information needed for deportation and exclusion proceedings were entitled to expedited processing and that the agency was not eligible for an extension. *Id.* at 1568. This statutory construction was followed by a New York district court in *Ferguson v. F.B.I.*, 722 F.Supp. 1137, 1143 (S.D.N.Y.1989) (held F.B.I. had not exercised "due diligence" because it had not given due consideration to the urgency of plaintiff's request where plaintiff needed the information for post-conviction proceedings).

In the government's proposed findings of fact and conclusions of law, the government does not contest the plaintiff's urgent need for the information. The government claims that *Mayock*, is distinguishable on the grounds that the Miami INS office has a procedure in place to respond to urgent requests on an expedited basis. Plaintiff, however, has provided evidence which refutes this contention. In a letter dated July 27, 1990, Margaret Snyder, the FOIA/PA officer of the Miami INS District Office, states the following:

> We are receiving a large number of requests and cannot always respond promptly. In order to be fair to all, we answer requests in order of receipt or as soon thereafter as the records can be located. Exceptions to this general practice are requests for only a few pages of records. *We can no longer, at this time, expedite for court hearings.* (emphasis added).

 The court finds that plaintiff's requests for information needed in pending deportation and exclusion hearings constitute urgent need, and, in light of prior opinions, the court determines that the request should be given priority in processing. In the Miami District Office of the INS there is clearly no priority system currently in place for processing FOIA requests which are urgently needed for deportation or exclusion hearings. The court

determines that the facts in *Mayock* are indistinguishable from the case presented here. The court is inclined to follow the statutory construction in *Mayock*. Finding this interpretation consistent with the general approach of other cases, the court concludes that the Miami District Office has not exercised "due diligence" in that it has not given priority to FOIA requests where the information is urgently needed for pending deportation and exclusion proceedings.

In conclusion, the court holds the INS has failed to demonstrate that "exceptional circumstances" exist and that it has exercised "due diligence" in responding to the request. The Miami District Office of the INS has not complied with the specified time period requirements mandated in the clear language of the statute.

## VI. REMEDY

It appears that § 552(a)(6)(C) was designed to address the problem of delay arising in individual requests. District courts have generally applied the provision in separate cases involving the processing of specific requests. In instances where the courts have determined that the agency was not in compliance with the statute, the courts ordered the agency to respond to the specific request within a designated time period. *See Ettlinger v. FBI*, 596 F.Supp. 867, 879 (D.Mass.1984); *Hinton v. F.B.I.*, 527 F.Supp. 223, 225 (E.D.Pa.1981); *Hamlin v. Kelley*, 433 F.Supp. 180, 183 (N.D.Ill. 1977). Here, plaintiff has not requested that the court order a specific request be processed within the statutory time period, but rather that the court order the Miami District Office of the INS to comply with the FOIA time limits mandated by statute.

Circuit courts have held that broader injunctive relief is appropriate to enforce FOIA provisions under some circumstances. *See Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486 (D.C.Cir.1988) (where party had obtained relief as to specific request, claim for injunctive relief based on agency's policy or practice of delayed disclosure was not moot); *Long v. United States Internal Revenue Service*, 693 F.2d 907 (9th Cir.1982) (injunctive relief appropriate to prevent lengthy delays and repeated litigation over disclosure of IRS documents). A district court issued an injunction, ordering the San Francisco District Office of the INS to refrain from failing to comply with the time requirements set forth in the statute. *See Mayock*, 714 F.Supp. at 1568.

The court acknowledges the possible financial difficulties resulting from the issuance of an injunction in the instant case. Specifically, the court considers the concern expressed in *Caifano v. Wampler*, 588 F.Supp. 1392 (N.D.Ill.1984). Struggling with the determination of a remedy, the court stated that "we do not consider it appropriate to order federal agencies to restructure their resource allocation so as to devote more resources to the task of FOIA compliance and less to the substantive focus of the respective agencies." *Id.* at 1394.

The court, however, is more inclined to follow the approach articulated by Judge Leventhal in his concurrence in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976). Judge Leventhal addressed the problem of considering the defendant's financial capabilities. Criticizing the majority opinion for inquiring about the defendants' resources, he stated:

> [t]he courts are established to declare rights, and they should not take into account the resources of the defendant as a reason for not declaring a right. Otherwise, the courts will have to go beyond examining the relationship of the parties, generally a sufficiently difficult task, and go into the relationship of the defendant to all other persons having a claim upon him, an essentially unmanageable task.

[*Id.* at 620.] Finally, the court notes with approval Judge Leventhal's statements regarding the role of the courts.

> The legislature contemplates that the judiciary will seek to define executive compliance according to the legislative mandate. Softening that mandate by construction serves to provide a gloss that

the agency is properly performing the duties assigned by the statute, and operates, in effect, to gloss over and screen out any shortfalls in agency performance from the committees and bodies of the legislature. They might otherwise by compelled—by explicit judicial avowal that its decree enforcing the legislative will cannot be enforced by sanctions—to confront the gulf between their expressed will and the practical realities of agency compliance. Adapting what we have said in earlier cases—'[s]o long as [Congress] prescribes a system of [performance] by an agency subject to court review the courts may not abandon their responsibility by acquiescing in a charade or a rubber stamping of [nonperformance] in agency trappings.'

[*Id.* at 618 (citations omitted).] In accordance with the sentiment expressed here, the court is not willing to sanction the government's non-compliance with the strict time limits imposed by the statute.

Based on the foregoing analysis, it is hereby:

ORDERED and ADJUDGED that the INS District Office in Miami, Florida is hereby ordered to comply with the time requirements set forth in 5 U.S.C. § 552(a)(6)(A), (B) and (C). The injunctive relief is limited to the Miami INS Office. The facts before the court are not sufficient to award plaintiff injunctive relief with respect to any other INS District Offices.

ORDERED and ADJUDGED that the Miami District Office of the INS shall not invoke the 10–day extension under 5 U.S.C.A. § 552(a)(6)(B) more than *once* per FOIA request.

ORDERED and ADJUDGED that the INS District Office in Miami, Florida give due consideration for priority to FOIA requests where there is urgent need for the information in pending deportation and exclusion proceedings.

DONE and ORDERED.