**Michael D. RAY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION & NATURALIZATION SERVICE, Defendant.**

No. 89–0288–CIV.

United States District Court, S.D. Florida.

May 3, 1994.

Neil D. Kolner, for plaintiff.

Dexter A. Lee, Asst. U.S. Atty., Miami, FL, for defendant.

## ORDER

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon an Order of the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit's Order vacated and remanded the portion of this Court's Order in *Ray v. U.S. Department of Justice, I.N.S.,* 770 F.Supp. 1544 (S.D.Fla.1990) that addressed whether certain information pertaining to U.S. Government interviews with Haitian nationals was exempt from disclosure under 5 U.S.C.A. § 552(b)(6) (West 1977).

## I. Background

In *Ray v. U.S. Dept. of Justice, I.N.S.,* 770 F.Supp. 1544, 1552 (S.D.Fla.1990), the Plaintiff requested relief under the Freedom of Information Act, 5 U.S.C.A. § 552 (West 1977) ("FOIA"). The Plaintiff sought to compel the U.S. Department of Justice, Immigration and Naturalization Service ("INS") to produce certain agency records relating to the interdictions of six vessels carrying Haitian nationals. This Court directed the INS District Office in Miami to comply with the time requirements set forth in 5 U.S.C.A. § 552(a)(6)(A), (B) and (C). The Court ordered the Miami INS Office not to invoke the 10–day extension under 5 U.S.C.A. § 552(a)(6)(B) more than once per FOIA request. *Id.* In addition, the Court ordered the Miami INS Office to give due consideration to FOIA requests when there is urgent need for the information in pending deportation and exclusion hearings. *Id.*

In granting the requested injunction, the Court rejected the Government's argument that the names and addresses contained in the documents were exempt from disclosure under 5 U.S.C.A. § 552(b)(6),[1] which provides that FOIA's mandatory disclosure requirement does not apply to "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy." This Court found that the Eleventh Circuit had resolved this issue definitively in *Ray v. Dept. of Justice,* 908 F.2d 1549 (11th Cir.1990). *See Ray,* 770 F.Supp. at 1545–46. The Eleventh Circuit ruled that disclosure was mandated because the privacy interests of the individuals were outweighed by the strong public interest in disclosure of the information. 770 F.Supp. at 1546 (*citing Ray,* 908 F.2d at 1556). Subsequently, *Ray v. Dept. of Justice* 908 F.2d 1549 (11th Cir.1990) was reversed in *U.S. Dept. of State v. Ray,* —— U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

The Eleventh Circuit then granted the Government's Motion to Vacate and Remand the District Court's Disclosure Order.[2] The Eleventh Circuit vacated and remanded the portion of this Court's Order in *Ray v. U.S. Dept. of Justice, I.N.S.,* 770 F.Supp. 1544 (S.D.Fla.1990), which relied on *Ray v. Dept. of Justice* 908 F.2d 1549 (11th Cir.1990), in requiring the Government to disclose the redacted portion of the documents. Accordingly, this Court now must determine whether the Plaintiff is entitled to receive the redacted portions of the documents in light of the Supreme Court's decision in *U.S. Dept. of State v. Ray,* —— U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

## II. Analysis

### A. U.S. Dept. of State v. Ray

In *U.S. Dept. of State v. Ray,* —— U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), the Supreme Court held that Haitians who were seeking political asylum were not entitled to receive from the State Department the names of Haitian nationals who had been returned to Haiti. In that case, the State Department conducted interviews of a sample of unsuccessful emigrants, six months after their involuntary return to Haiti. *Id.* at ——, 112 S.Ct. at 544. Plaintiff sought copies of certain State Department interview

---

1. The Government redacted the names, addresses, and places of birth from all documents that were released to the Plaintiff.

2. The Government did not appeal the portion of 770 F.Supp. 1544 (S.D.Fla.1990) that required the INS District Office in Miami, Florida to comply with the time requirements set forth in 5 U.S.C.A. § 552(a)(6)(A), (B), and (C).

reports. *Id.* The State Department produced 25 documents. *Id.* In 17 of the documents, the names and other identifying factors were redacted before the documents were delivered to the Plaintiff. *Id.* at —— – ——, 112 S.Ct. at 544–45. The Supreme Court considered whether the redaction was lawful. *Id.* at ——, 112 S.Ct. at 545.

■ The Court stated that in order to prevail under the exemption, the Government must show that the disclosure of the unredacted interview documents "would constitute a clearly unwarranted invasion of that person's privacy." *Id.* at —— – ——, 112 S.Ct. at 546–47. The presumption in favor of disclosure places the burden on the Government to justify withholding any of the requested documents or redacting any portion of a requested document. *Id.* at ——, 112 S.Ct. at 547. Congress, however, has recognized that the policy of informing the public about the operation of its Government can be served in some cases without unnecessarily compromising individual interests in privacy. *Id.* Thus, the issue considered by the Court was whether the Government had carried its burden of demonstrating that the disclosure of the redacted interview summaries adequately served the statutory purpose, and that the release of the redacted information would constitute a "clearly unwarranted" invasion of their privacy. *Id.* at ——, 112 S.Ct. at 548.

■ In determining whether the Government had met its burden, the Court applied the balancing test formulated in *Dept. of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The *Rose* test requires the balancing of " 'the individual's right to privacy' against the basic policy of opening 'agency action to the light of public scrutiny.' " *Ray,* —— U.S. at ——, 112 S.Ct. at 548 (*citing Rose,* 425 U.S. at 372, 96 S.Ct. at 1604).

The *U.S. Dept. of State v. Ray* Court first considered the privacy interests of the Haitian nationals. The Court noted that the Plaintiff did not seek only the names and addresses of the Haitian nationals, but he sought the names and addresses that were connected with the summaries which contained "highly personal information," such as marital and employment status, children, living conditions, and attempts to leave the country. *Id.* Although the disclosure of the personal information alone constituted only a de minimis invasion of privacy, the invasion became significant when the information was linked to a particular interviewee. *Id.*

In addition, the Court found significant that the disclosure of the unredacted interview summaries would identify publicly those persons who cooperated with the State Department investigation of the Haitian government's compliance with its promise to the United States government not to prosecute the returnees. *Id.* This disclosure could subject the interviewees and their families to embarrassment in their communities. *Id.* More importantly, the interviewees possess a special status because they are persons who left Haiti in violation of Haitian law and are protected from prosecution by Haiti's promise to the United States government. *Id.* Although the Court noted that the State Department's monitoring program has indicated that Haiti has kept its promise to the United States, the Court found that the danger of mistreatment was real:

> How significant the danger of mistreatment may now be is, of course, impossible to measure, but the privacy interest in protecting these individuals from any retaliatory action that might result form a renewed interest in their aborted attempt to emigrate must be given great weight. Indeed, the very purpose of respondents' FOIA request is to attempt to prove that such a danger is present today.

*Id.*

In addition, the Court found that the Court of Appeals gave insufficient weight to the fact that the interviews were conducted pursuant to a promise of confidentiality. *Id.* at ——, 112 S.Ct. at 549. This promise has special significance because not only does this promise have the potential to elicit private information that the interviewee might not reveal otherwise, but the risk of mistreatment gives the interviewees an additional interest in assuring their anonymity. *Id.* The fact that the Plaintiff sought the names and addresses of the returned Haitian na-

tionals in order that he might make direct contact with the individuals in Haiti magnified the importance of keeping their identities confidential. *Id.*

After concluding that the privacy interests of the Haitian nationals were significant, the Court next considered the public interest in disclosure of the redacted information. *Id.* The Court found that the public had a cognizable interest in knowing whether the State Department had monitored sufficiently Haiti's promise not to prosecute the returnees. *Id.* The Court found, however, that the public interest had been served adequately by the disclosure of the redacted documents. *Id.* The disclosure of the unredacted documents, therefore, would constitute a "clearly unwarranted" invasion of the interviewees' privacy. *Id.*

The Court found that the redacted portions of the interview summaries would not illuminate more clearly whether the State Department had fulfilled its obligation to monitor the Haitian government's compliance. *Id.* The Plaintiff, however, argued that a public interest existed in the additional information that could be gleaned from second interviews with the returnees. *Id.* The Court found, however, that there was no evidence in the record to suggest that any additional information would be gained from the follow-up interviews. *Id.* Accordingly, the Court declined to address whether such "derivative use" would justify the release of information about private individuals. *Id.*

As a final note, the Court indicated that it was unpersuaded by the Plaintiff's asserted interest in testing the truthfulness of the interview reports. *Id.* "There is not a scintilla of evidence, either in the documents themselves or elsewhere in the record, that tends to impugn the integrity of the reports." *Id.* Government records typically carry a

presumption of legitimacy. *Id.* Based on this balancing of interests, the Court concluded that the proposed invasion of the privacy interests of the Haitian nationals was clearly unwarranted. *Id.*

## B. *The Instant Case*

In the instant case, Plaintiff filed six FOIA requests, seeking the results of INS interviews with Haitian nationals who were interdicted on the high seas and questioned aboard United States Coast Guard Cutters, as reported by *The Miami Herald.* In addition, the Plaintiff requested information regarding the manner in which the interdiction interviews were conducted and any guidelines issued by the INS with regard to the interdiction process.

Alice Neary of the INS responded to the Plaintiff's FOIA requests by producing copies of five Interdiction Summary Sheets and one Interdiction Report. (Plaintiff's Ex. 6A–Q). The Interdiction Report and the Summary Sheets provide a very general description of the vessels, their passengers, places of origin and destinations. The Interdiction Report and all of the Summary Sheets indicate that none of the passengers had any fear of returning to Haiti. The INS also provided the Plaintiff with a copy of a Memorandum from Andrew J. Carmichael regarding procedures that INS personnel should employ during the interdictions (Plaintiff's Ex. 6R), and a copy of current guidelines provided to all personnel assigned to the Office of Haitian Migrant Interdiction Operations.

In addition, the INS produced copies of fifty questionnaires that were filled out with respect to the interdiction aboard the M/V Rose Mellin.[3] The questionnaires consisted of seventeen questions.[4] The names, places

---

**3.** Government Exhibit 1 contains the unredacted copies. The redacted portions of the documents were highlighted for the Court's review.

**4.** The questionnaires contained the following questions:
1. What is your name?
2. Where were you born?
3. What is your date of birth?
4. What is your current address?
5. What is your country of citizenship?

6. Do you have a passport
7. When you left Haiti, to what country did you intend to go?
8. Why did you leave Haiti?
9. What kind of work do you do?
10. Why did you wish to go to the US?
11. Have you belonged to any organizations in Haiti?
12. Have you done anything in Haiti in which [sic] you believe will result in problems for you if you return to Haiti?

of birth, addresses (when indicated)[5], and signatures (when signed)[6] had been redacted from the questionnaires that the INS supplied to the Plaintiff.

Subsequently, Ms. Neary sent a letter to the Plaintiff[7] explaining that she had enclosed copies of recently discovered logs relating to six FOIA requests that are the subject of this litigation. The names, dates and places of birth, and addresses (when indicated) were deleted[8] from the documents pursuant to 5 U.S.C.A. § 552(b)(6).[9]

## C. *Employing the Rose Balancing Test*

In examining the Plaintiff's claim that he is entitled to the unredacted documents, the Court must employ the *Rose* balancing analysis as applied by the Supreme Court in *U.S. Dept. of State v. Ray.*

### 1. *Redaction of the Logs*

The Plaintiff seeks the redacted portions of the logs provided to him by the INS. Applying the analysis set forth in *U.S. Dept. of State v. Ray*, the Court begins by noting that the logs do not contain the same information as that considered "highly personal" by the Supreme Court. The unredacted logs in the instant case are merely lists containing the name, age (or birth date), gender, address, and place of birth of each Haitian national being returned to Haiti. (Government Ex. 1). Unlike *U.S. Dept. of State v. Ray*, these logs do not contain information regarding "marital and employment status, children, and living conditions" linked with those names and addresses. *See* —— U.S. at ——, 112 S.Ct. at 548.

The logs, however, do have the same significance as the summaries in one very important respect—the logs identify the interdictees as persons who left Haiti in violation of Haitian law and face a danger of persecution upon their return to Haiti. As noted above, the privacy interest in protecting these individuals from retaliatory action must be given great weight. *U.S. Dept. of State v. Ray*, —— U.S. at ——, 112 S.Ct. at 548.

Yet, in the instant case, unlike *U.S. Dept. of State v. Ray*, unredacted copies of the logs were given to Haitian authorities. Leon Jennings, then Chief Interdiction Officer at the INS, testified that the INS gives the Haitian Red Cross and the Haitian Foreign Minister's Office a copy of each written log that is prepared, as well as a copy of the Interdiction Summary Sheet. (Transcript 4/5/90 Trial at 76, 78). This disclosure lessens the concern that releasing the unredacted documents would identify publicly these individuals as persons who left Haiti in violation of the law. The Haitian government already possesses that information.

In addition, Mr. Jennings testified that the logs typically are not prepared pursuant to a promise of confidentiality. (Transcript 4/5/90 Trial at 76–79). No promise of confidentiality is extended unless an individual reveals something that indicates to the interviewer

---

13. Have you ever been detained or sent to jail in Haiti?
14. Do the conditions in Haiti effect [sic] your freedom more than the rest of the population?
15. Have you or your family been mistreated by authorities in Haiti?
16. Is there any reason you cannot return to Haiti?
17. Is there anything else you would like to say?

5. Most of the questionnaires indicated that the person's current address was "unknown."

6. Many of the forms were signed only with an "X."

7. Ms. Neary's letter also indicated that records had been discovered relating to four individuals who had expressed fear of returning to Haiti. (Plaintiff's Ex 7A). The INS withheld the records entirely, citing 5 U.S.C.A. § 552(b)(6). The

INS released only the Interdiction Summary Sheets for the boats on which those people were passengers.

It is unclear whether the Plaintiff objects to the withholding of those documents. The Court, therefore, will not address whether withholding those documents was lawful.

8. Information regarding one woman whose baby was born in international waters on or about January 9, 1988 was not deleted.

9. The redacted logs contained no identifying information. For example, one log contained only a numerical list, numbered 1–65, with a corresponding gender and date of birth or age for each passenger. No other information was provided. (Plaintiff's Ex. 7K). The unredacted version of the same document contains the name, place of birth, and the address when indicated. (Government Ex. 1).

that the individual may fear persecution if he or she returns to Haiti.[10] Thus, unlike *U.S. Dept. of State v. Ray*, there was no promise of confidentiality that might elicit private information that the interviewee might not reveal otherwise. *See* — U.S. at ——, 112 S.Ct. at 549.

The Supreme Court, however, was not concerned merely that the promise of confidentiality would elicit otherwise unrevealed private information. The Court placed special emphasis on the invasion of one's privacy that might result from a third party, such as the Plaintiff, traveling to Haiti to make direct contact with the Haitian national in his or her home. *Id.* "[T]he intent to interview the returnees magnifies the importance of maintaining confidentiality of their identities." *Id.*[11] The Court finds that although there are factors present in the instant case which appear to lessen the Haitian nationals' privacy interests in nondisclosure, the possibility of third persons making potentially unwelcome contact with the returnees in Haiti necessitates a finding that the privacy interests at stake here are significant.

On the other side of the scale is the public interest in disclosure of the information. As the Supreme Court has noted:

> FOIA's "basic policy of 'full agency disclosure unless information is exempted under clearly delineated statutory language,' ... focuses on the citizens' right to be informed about 'what their government is up to.' Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose."

*U.S. Dept. of State v. Ray*, — U.S. at ——, 112 S.Ct. at 549 (*citing Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 773, 109 S.Ct. 1468, 1481–82, 103 L.Ed.2d 774 (1989)

(*quoting Dept. of Air Force v. Rose*, 425 U.S. at 360–61, 96 S.Ct. at 1598–99)). This Court finds that the public interest in learning whether the INS is fulfilling its duties not to turn away Haitians who may have valid claims for political asylum is cognizable under FOIA. In performing the *Rose* balancing test, the Court must analyze to what extent this public interest would be served by the disclosure of the redacted information.

The instant case differs from *U.S. Dept. of State v. Ray* because the redacted logs provide little, if any, information regarding the Government's conduct. The redacted logs merely indicate the number of Haitian nationals on a particular vessel and designate the gender and the age of each individual.

Obtaining the redacted portions of the logs alone, however, would not provide any additional information about the conduct of the INS. The unredacted logs do not contain any indication of whether the interdictees did or did not fear persecution upon their return to Haiti. They merely list the names, places of birth, and addresses (when given) of the interdictees. This information alone does not "shed additional light on the Government's conduct of its obligation." *See* — U.S. at ——, 112 S.Ct. at 549.

The Eleventh Circuit, however, has recognized that although the information itself does not further the purposes of FOIA by informing the public of what the Government is doing, the release of the identifying information can serve the public interest by allowing third persons to investigate further our Government's conduct. In *Ray v. U.S. Dept. of Justice*, 908 F.2d 1549 (11th Cir.1990), *rev'd on other grounds*, — U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), the Eleventh Circuit found that the Plaintiffs sought:

**10.** At trial, Mr. Jennings testified that Haitian interdictees are promised confidentiality if they tell the interviewer anything that would indicate the potential for persecution or a fear of returning to Haiti. (Transcript 4/5/90 Trial at 76–78). In other words, the interviewee is not promised confidentiality at the start of the interview. The promise of confidentiality comes only after the interviewee has given some indication that he or she may fear persecution or fear returning to Haiti.

**11.** In addition, the Court notes that the Supreme Court, in the context of a FOIA request for addresses of private citizens, recently discussed the privacy interest one possesses in his or her home address. The Court did not quantify precisely the privacy interest, but did recognize that the citizens had at least "*some* nontrivial privacy interest in nondisclosure." *U.S. Dept. of Defense v. F.L.R.A.*, — U.S. ——, ——, 114 S.Ct. 1006,

information about individuals that will help them to scrutinize what our government is doing and saying regarding Haitians who unsuccessfully attempt to flee to this country. This is an important public interest— the kind which Congress had in mind in framing FOIA.

908 F.2d. at 1556.

On appeal to the Supreme Court in *U.S. Dept. of State v. Ray*, the Defendant argued that this type of "derivative use" of requested information was "entirely beyond the purpose of the statute" and that the Supreme Court should exclude categorically such use from the balancing process. —— U.S. at ——, 112 S.Ct. at 549. Although, the Supreme Court reversed the Eleventh Circuit's holding, it declined to adopt the categorical rule for which the Defendant argued. *Id.* The Supreme Court said merely:

> because there is nothing in the record to suggest that a second series of interviews with already interviewed returnees would produce any relevant information that is not set forth in the documents that have already been produced. Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy.

—— U.S. at ——, 112 S.Ct. at 549. Thus, the Supreme Court found no evidence, in that case, that anything would be gained by a second series of interviews. *Id.* The Court found that the public interest in disclosure was served adequately by the disclosure of the redacted documents. *Id.* Based on the fact that the public interest was served adequately by the disclosure of the redacted documents, the Supreme Court found that disclosure in that case would constitute a clearly unwarranted invasion of the interviewees' privacy. *Id.*

This Court finds that there is a very important difference between *U.S. Dept. of State v. Ray* and the instant case. In *U.S. Dept. of State v. Ray*, the redacted interview summaries provided important information such as why the individual wanted to immigrate to the United States and whether the individual had suffered any persecution upon his or her return to Haiti.[12] In the instant case, the redacted logs contain almost no information. Significantly, they do not contain information regarding why the interdictees sought to immigrate to the United States and whether or not they feared persecution. Thus, in the instant case, unlike *U.S. Dept. of State v. Ray*, the public interest is not adequately served by the release of the redacted logs.

Unlike in *U.S. Dept. of State v. Ray*, this Court cannot say that interviewing the returnees would not produce any information concerning our Government's conduct during the interdiction process. Based on this important distinguishing factor and the fact that the Supreme Court has declined to reject to derivative use theory in its entirety, the Court finds that it is bound to follow the reasoning of the Eleventh Circuit in *U.S. Dept. of State v. Ray*, 908 F.2d 1549 (11th Cir.1990), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), recognizing the public interest in allowing a derivative use of the redacted information. Accordingly, the Court finds that the public interest in disclosure is more significant in the instant case than in *U.S. Dept. of State v. Ray*.[13]

1015, 127 L.Ed.2d 325 (1994) (emphasis in original).

**12.** An example of one of the interview summaries is described at —— U.S. at —— n. 5, 112 S.Ct. at 545 n. 5.

**13.** The Court finds that the public interest is significant only if the derivative use of the information is a valid factor in determining the public interest. If the Eleventh Circuit decides that the derivative use of information is an improper consideration under FOIA after *U.S. Dept. of State v. Ray*, —— U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), this Court would reach a different conclusion under the facts today. If the deriva-

tive use of the information could not be considered under FOIA, this Court would find no public interest in the disclosure of the redacted information. This is so because, as discussed above, the names and addresses alone do not shed additional light on whether the INS is performing adequately its duties.

Subsequent to the Supreme Court's decision in *U.S. Dept. of State v. Ray*, the Eleventh Circuit considered a FOIA request for the addresses of private individuals. In *F.L.R.A. v. U.S. Dept. of Defense*, 977 F.2d 545, 548 (11th Cir.1992), the Eleventh Circuit found that no FOIA-related public interest would be served by providing a labor union with a listing of the addresses of non-union federal employees. The Eleventh Circuit stated:

 Having weighed the privacy interests of the interdictees against the public interest in disclosure, the Court holds that disclosure of the redacted portions of the questionnaires would not constitute a *"clearly unwarranted* invasion of personal privacy."* 5 U.S.C.A. § 552(b)(6) (West 1977) (emphasis added). Plaintiff, therefore, is entitled to receive the redacted information contained in the logs in question.[14]

### 2. *The Redaction of the Fifty Haitian Asylum Questionnaires From the M/V Rose Mellin Interdiction*

 The balancing analysis with respect to the redacted portions of the Haitian Asylum Questionnaires leads to a different result. Unlike the logs described above, the questionnaires contain "highly personal information." The information is even more personal than that contained in the interview summaries in question in *U.S. Dept. of State v. Ray*.[15] In the instant case, as in *U.S. Dept. of State v. Ray,* the invasion of privacy would be very significant if this highly personal information were linked with the names and addresses of the interviewees.

In addition, those whose responses are contained in the questionnaires are persons who left Haiti in violation of the law and face the danger of persecution upon their return to Haiti. As the Supreme Court has noted, it is impossible to quantify the danger of mistreatment. —— U.S. at ——, 112 S.Ct. at 548. The privacy interest in protecting these individuals from retaliatory action, however, must be afforded great weight. *Id.* The questionnaires, unlike the logs above, are not given to the Haitian authorities. (Transcript 4/5/90 Trial at 78–79). Accordingly, the privacy interests of the Haitian nationals who responded to the questionnaires are more significant than those whose names merely appear on the logs.

The Plaintiff's stated intention to use the redacted information in order to contact the returnees directly again implicates serious privacy concerns. (Transcript 4/5/90 Trial at 50–51; 4/30/90 Trial at 28, 53–54). As stated above, this intention magnifies the importance of maintaining the confidentiality of the identities of the interdictees. *U.S. Dept. of State v. Ray,* —— U.S. at ——, 112 S.Ct. at 549.

Another significant factor is whether the interviews were conducted pursuant to a promise of confidentiality. *Id.* In the instant case, it is unclear whether the questionnaires were filled out pursuant to a promise

The FLRA [Federal Labor Relations Authority] says the union's request is proper under FOIA because the addresses could be used not only for union information and recruiting, but also for contacting federal employees to learn something about the government. But with no allegation that the government might be operating irregularly, the union cannot establish public interest based on something so tenuous. "Mere speculation about hypothetical public benefits cannot outweigh [sic] demonstrably significant invasion of privacy." *United States Dep't of State v. Ray,* —— U.S. ——, ——, 112 S.Ct. 541, 549, 116 L.Ed.2d 526 (1991) (requestor based public interest in part upon hope that they or others might "be able to use that information to obtain additional information outside the government files"). *Id.*

The Court is unsure whether the Eleventh Circuit has changed its position with respect to consideration of the derivative use of information in performing the *Rose* balancing test. But, because the Eleventh Circuit has not retreated explicitly from its prior position on derivative use, this Court is bound to follow *U.S. Dept. of State v. Ray,* 908 F.2d 1549 (11th Cir.1990), *rev'd on*

*other grounds,* —— U.S. ——, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), in recognizing the validity of the derivative use theory.

**14.** The Plaintiff, however, is not entitled to receive the redacted portions of the log relating to the interdiction of the M/V Rose Mellin. Releasing the names and addresses contained in that log may enable the Plaintiff or other third parties to match the names and addresses with the information contained in the Haitian Asylum Questionnaires relating to the M/V Rose Mellin. This would allow the Plaintiff gain the redacted information regarding the questionnaires in contravention of the Court's holding below that releasing the redacted portions of the questionnaires would constitute a clearly unwarranted invasion of personal privacy.

**15.** For example, the questionnaires ask whether the individual belonged to any organizations in Haiti and whether the individual has done anything in Haiti which he or she feels will result in problems upon his or her return to Haiti. (*See* footnote 4 for a complete list of the questions contained in the questionnaires).

of confidentiality.[16] This factor, however, is not dispositive. The Court finds that regardless of whether the responses to the questionnaires were elicited pursuant to a promise of confidentiality, the interest in protecting the privacy of the redacted information is quite substantial.

Next, the Court must consider the public interest in disclosure. The redacted questionnaires, unlike the logs considered above, do provide useful information. They reveal information such as whether or not the interdictees had any fear of persecution upon returning to Haiti and why the interdictees wished to immigrate to the United States. As with the logs, the addition of the redacted information alone would not shed additional light on the Government's conduct.

In considering whether the public interest would be served through some derivative use of the information, the Court finds the questionnaires very similar to the interview summaries in *U.S. Dept. of State v. Ray*. The redacted questionnaires, like the redacted summaries in *U.S. Dept. of State v. Ray*, adequately serve the public interest by providing information regarding whether our Government is fulfilling its mission. Nothing in the record of the instant case suggests that any additional relevant information would be gained from reinterviewing the interdictees. "Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy." *U.S. Dept. of State v. Ray*, — U.S. at —, 112 S.Ct. at 549.

One final point remains for the Court to address. The Plaintiff has asserted that there is a public interest in ascertaining whether the Government has been truthful regarding the procedures followed during the interdictions and with respect to the processing of the FOIA requests in question. As in *U.S. Dept. of State v. Ray*, there is no evidence to impugn the integrity of the documents at issue in this case or the conduct of Government officials during the interdiction process. "We generally accord government

records and official conduct a presumption of legitimacy." *U.S. Dept. of State v. Ray*, — U.S. at —, 112 S.Ct. at 550.

The Plaintiff has submitted a report prepared by the Lawyers Committee for Human Rights as evidence that the United States Government has not been completely truthful about the Haitian interdiction process. (Plaintiff's Ex. 13A). The Court finds that the report contains only hearsay statements that are insufficient to overcome the "presumption of legitimacy" afforded to Government conduct and documents. Thus, the Plaintiff has not submitted evidence of official misconduct sufficient to identify a genuine public interest in disclosure of the redacted portions of the logs. *See U.S. Dept. of State v. Ray*, — U.S. at —, 112 S.Ct. at 550. Having weighed the privacy interests of the interdictees against the public interest in disclosure, the Court finds that disclosure of the redacted portions of the questionnaires would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(6) (West 1977).

### D. *The Existence of Interview Logs*

 In response to his sixth FOIA request, Plaintiff received a copy of a memorandum from Andrew J. Carmichael regarding procedures that INS personnel should employ during interdictions. (Plaintiff's Ex. 6R). The memorandum instructs that a list must be prepared containing certain information about the interdictees. The Plaintiff claims that this memorandum requires INS personnel to prepare interview logs that contain information such as the interdictee's reason for leaving Haiti, reason for going to the United States and whether he or she has any fear of returning to Haiti. The Plaintiff seeks copies of interview logs relating to the interdictions in question.

At trial, Mr. Jennings testified that the memorandum to which the Plaintiff refers requires only that the INS prepare lists of the names, addresses, dates and places of birth of the interdictees. (Transcript 4/5/90

---

**16.** As discussed in footnote 10, Mr. Jennings testified that a promise of confidentiality is made only after someone indicates a fear of persecution. It appears that no promise of confidentiali-

ty would have been made in the case because all fifty people who responded to the questionnaire indicated that they did not fear persecution.

Trial at 61). Mr. Jennings testified that the INS prepares a written record of the information that the Plaintiff seeks only if the interdictee has indicated a fear of returning to Haiti or that he or she has been subjected to persecution.[17] (Transcript 4/5/90 Trial at 59–62). Mr. Jennings testified that the records that the Plaintiff seeks do not exist. (Transcript 4/5/90 Trial at 59–60).

Although the Court finds the Plaintiff's interpretation of the memorandum reasonable, the credible testimony of Mr. Jennings, then Chief Interdiction Officer, shows that the Plaintiff's interpretation is incorrect. The INS apparently did not prepare the logs that the Plaintiff seeks. Regardless of whether the memorandum requires that such logs be kept, the Court is convinced that the logs were not kept.

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the INS may not invoke the privacy exemption contained in 5 U.S.C.A. § 552(b)(6) (West 1977) with respect to the identifying information contained in the logs previously released to the Plaintiff in this case (Plaintiff's Ex. 7K–N, P). The INS shall release to the Plaintiff the redacted portions logs within twenty (20) days from the date of this order.[18] The INS may invoke properly the § 552(b)(6) privacy exemption with respect to the identifying information in the fifty Haitian Asylum Questionnaires relating to the M/V Rose Mellin interdiction. The INS shall not disclose the redacted information contained in those questionnaires.

DONE AND ORDERED.

---

17. Mr. Jennings explained that the fifty questionnaires relating to the interdiction of the M/V Rose Mellin were prepared by a particular immigration officer at his own initiative. (Transcript 4/5/90 Trial at 66–67).

18. The INS shall not release the redacted portion of the log relating to the M/V Rose Mellin interdiction. (*See* Plaintiff's Ex. 70).